**NAVIGAZIONE ALTA ITALIA,**
**Appellant,**

**v.**

**KEYSTONE SHIPPING COMPANY,**
**Appellee.**

**No. 21760.**

United States Court of Appeals
Fifth Circuit.

Aug. 25, 1966.

---

George W. Renaudin, Houston, Tex., Royston, Rayzor & Cook, Houston, Tex., of counsel, for appellant.

Robert Eikel, Houston, Tex., Eikel & Goller, Houston, Tex., for appellee.

Before JONES and BROWN, Circuit Judges and DYER, District Judge.

JONES, Circuit Judge:

About 11:30 o'clock during the night of February 15, 1961, the freighter Monfiore, owned by the appellant, Navigazione Alta Italia, and the tanker Spirit of Liberty, owned by the appellee, Keystone Shipping Company, collided in the Houston Ship Channel. The libel of the appellee, claiming damage of $60,000 to the Spirit of Liberty, was met by a cross-libel of the appellant seeking an award of $180,000 for damage to the Monfiore, with each party asserting that the collision resulted from the sole fault of the other. During a lengthy trial many witnesses testified and a number of exhibits were received in evidence. At the conclusion of the trial the court announced that the decision would be against the Monfiore and its owner, the appellant, and in favor of the owner of the Spirit of Liberty, the appellee. Findings of Fact and Conclusions of Law were made as submitted by the counsel for the appellee. An interlocutory decree was entered determining that the collision was caused by the sole fault of the Monfiore. Its owner has appealed.

The appellee takes the position that the only question is whether or not the findings of the district court are clearly erroneous and, submitting that each finding is based upon overwhelming evidence, says that there should be an affirmance of the district court's judgment under the principle of McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20. The appellant, on the other hand, says that the district court misapplied the major-minor fault rule and erred in failing to determine that the Spirit of Liberty was guilty of statutory fault requiring a decree of mutual fault and divided damages.

Although other points are raised, the principal contention of the Monfiore is that the Spirit of Liberty was subject to an absolute statutory duty to stop and reverse upon a danger signal being given, that it failed to do so and a determination of mutual fault was required as a matter of law in the absence of proof that the violation of duty could not have contributed to or worsened the effects of the collision. The trial court held that the actions of the Spirit of Liberty were committed in extremis and if it was guilty of any fault, it was technical and minor, when contrasted with the many serious faults of the Monfiore, and in no

way contributed to the collision or its effects.

When the two vessels were about three-quarters of a mile apart the Spirit of Liberty blew a one-blast signal for a port to port passing. The Monfiore answered with a like signal. The Spirit of Liberty was proceeding at about five knots and the speed of the Monfiore was approximately six knots. The vessels were proceeding at about half speed. The Monfiore blew a second one-blast signal when the vessels were about a half mile apart, to which the Spirit of Liberty made a like response. Witnesses for the Monfiore testified that as the vessels approached each other, the green starboard lights of the Spirit of Liberty became visible and from this the conclusion was reached on the Monfiore that the Spirit of Liberty had moved to the other side of the channel and was following what was or might become a collision course. The Monfiore gave a danger signal of four blasts followed by one blast. The Spirit of Liberty went full ahead on its engine and put the rudder hard right in the hope of giving the Monfiore more room for a port to port passing. Almost immediately, the Monfiore gave another four-blast signal followed by two blasts, and at the same time started to cross the bow of the Spirit of Liberty. The officers of the Monfiore believed a port to port crossing was impossible and they attempted to put it between the bank of the channel and the starboard side of the Spirit of Liberty. Confronted with this event, the Spirit of Liberty put its engines full speed astern and dropped anchor. The collision followed.

It is not contended here, as it was in the district court, that the Monfiore was free from fault. It is, rather, its position that the evidence required a finding of mutual fault with an equal division of damages under what has been referred to as "our obstinate cleaving to the ancient rule which has been abrogated by nearly all civilized nations." National Bulk Carriers v. United States, 2nd Cir. 1950, 183 F.2d 405, 410, cert. den. 340 U.S. 865, 71 S.Ct. 89, 95 L.Ed. 631. The classic statement of the rule,

asserted by the proctors who urge the claim on behalf of the Monfiore, is cast in these words:

"When, as in this case, a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been." The Pennsylvania, 86 U.S. (19 Wall.) 125, 136, 22 L.Ed. 148.

For the Monfiore it is said that when it sounded its first danger signal, the Spirit of Liberty was under a statutory duty to stop and reverse engines and that its failure to do so was a fault which created an unrebutted presumption that the fault was or might have been a contributing cause of the collision.

The record contains a good deal of confusing and conflicting testimony as to the kind and sequence of the whistle signals given by each vessel, the time interval between signals and the distances separating the vessels at the times the several blasts were sounded. Much is said as to whether the vessels were sufficiently far apart, when the first danger signal was blown by the Monfiore, for the Spirit of Liberty to have averted the collision if it had dropped anchor and gone full astern on its engines. The district court, with ample sustaining evidence before it, concluded that when the Monfiore thought the collision was imminent, blew danger signals and went to port across the bow of the Spirit of Liberty, the collision was unavoidable by any measures that might have been taken at that time by either vessel. The Spirit of Liberty, when the first danger signal was sounded, had no reason to suppose that the Monfiore would abandon its agreement for a port to port passing. It was not a fault, under the special cir-

cumstance confronting it, for the Spirit of Liberty to make an effort to give the Monfiore more channel room by going hard right and putting the engine at full ahead, which did not appreciably increase its speed, to accelerate the starboard movement. See Bloomfield Steamship Co. v. Brownsville Shrimp Exchange, 5th Cir. 1957, 243 F.2d 869; Green v. Crow, 5th Cir. 1957, 243 F.2d 401.

 Even if it be said that the failure of the Spirit of Liberty to stop and reverse engines upon hearing the first danger signal of the Monfiore was a fault, it does not follow that it must be cast for half the damages. The rule applicable here has been thus stated by this Court:

"Where the gross negligence of one vessel is wholly sufficient in itself to account for the collision, but the other vessel has committed a technical fault not shown to have contributed to the collision, and where the error of the latter is minor, doubt as to the latter's conduct will be resolved in her favor. * * * Furthermore, where the active fault of one vessel so flagrantly and heavily outweighs the passive faults of omission of the other vessel, the interests of justice are best served by condemning the more culpable vessel completely." Compania De Maderas, etc. v. The Queenston Heights, 5th Cir. 1955, 220 F.2d 120, 123, cert. den. Esso Shipping Co. v. Compania De Maderas, etc., 350 U.S. 824, 76 S.Ct. 52, 100 L.Ed. 736. See Atkins v. Lorentzen, 5th Cir. 1964, 328 F.2d 66.

 For the Monfiore it is claimed that the Spirit of Liberty was guilty of a statutory fault and failed to meet the burden of proving that its fault did not and could not have contributed to the collision. This contention is disposed of by the preceding discussion and does not require further elaboration.

The judgment of the district court was proper in all respects and is

Affirmed.