United States Court of Appeals,

Fifth Circuit.

Nos. 95-20130, 95-20210.

ACACIA VERA NAVIGATION CO., LTD., et al., Plaintiffs-Appellees,

v.

KEZIA, LTD., et al., Claimants-Appellants.

ACACIA VERA NAVIGATION CO., LTD., et al., Plaintiffs-Appellants,

and

M/V OMINA, Plaintiff,

v.

KEZIA, LTD., et al., Claimants-Appellees.

March 27, 1996.

Appeals from the United States District Court for the Southern District of Texas.

Before REYNALDO G. GARZA, WIENER and STEWART, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

BACKGROUND

This is an appeal from a limitation of liability judgment in admiralty against appellant the M/V BLUE CLOUD ("BC") for its collision with the M/V OMINA ("OMINA").[1] BC collided with OMINA on March 30, 1993 at night in a fairway near Galveston. OMINA, travelling 11-12 knots, was inbound to Houston and BC, travelling 18 knots, was outbound and in the process of overtaking an

---

[1]In this opinion, the parties are designated by the names of their respective vessels. The M/V OMINA was owned and/or operated by Acacia Vera Navigation Co. Ltd. and Seaways Chartering Co. Ltd. Kezia Ltd. and Ahrenkiel Shipping (H.K.) Ltd. are the owners of the M/V BLUE CLOUD.

unidentified tanker located off its starboard side. OMINA was in the middle of the fairway. BC was to the port side of the fairway and the tanker was to the starboard side of the fairway. As OMINA and BC were passing starboard to starboard at a distance of .30 nautical miles, BC took a sharp starboard turn colliding twice with OMINA.[2] According to the district court, OMINA would have passed between the freighter and BC without incident had each ship maintained her course.[3]

Owners of OMINA filed a Petition for Exoneration from and/or Limitation of Liability. The owners of BC made the sole claim against OMINA and posted a stipulation (corporate surety bond in admiralty) with the St. Paul Mercury Insurance Co. ("St. Paul") as surety in the amount of $1,150,000.00 in lieu of the arrest of BC for damages sustained by OMINA. The parties stipulated that the suit involved damages. Following a trial to the court, the court made findings of fact and conclusions of law holding BC solely at fault for the collision and, after determining damages, entered final judgment in favor of OMINA.

The district court held that while port to port passing is typically the rule, "it is the position of the vessels at the time

---

[2]One nautical mile equals 6080 feet. Hereinafter, miles will refer to nautical miles.

[3]OMINA made manual plots of its position that the district court relied on to find that OMINA maintained its position relative to BC prior to BC's sudden turn. The court found that had each ship maintained her position in the fairway, there would have been at least 3/10 of a mile distance between BC and OMINA and at least 4/10 of a mile between OMINA and the tanker, "a clear and sufficient distance in all respects."

they commence navigating with respect to each other which establishes the manner of passing." Since the vessels approached starboard to starboard and the pass could have been made safely, BC was at fault for attempting to make an unreasonable port to port turn. The court also held that since the vessels were not on reciprocal courses, OMINA had no duty under COLREG 14 (Rule 14) to pass port to port to avoid a non-existent risk.[4]

The lower court concluded that the most likely cause of the accident was confusion on BC as to whether a ship's red port light observed in the fairway was on the freighter or on OMINA.[5] Believing that OMINA had made a hard starboard turn, BC did so as well, colliding with OMINA. The district court found that OMINA never showed her red port side light to BC.[6] BC disputes this

---

[4]COLREGS is an abbreviation for the International Regulations for Preventing Collisions at Sea. *See* 33 U.S.C. foll. § 1602 (1986). Hereinafter, COLREGS will be referred to by rule number.

[5]BC's own expert witness Freehill concluded on deposition that the second mate's confusion was the cause of the collision though at trial he offered this scenario as "one of the possibilities."

[6]Rule 23 requires all power-driven vessels longer than 50 meters to display two masthead lights, a sternlight, and two sidelights (a red light mounted on the port side, and a green light mounted on the starboard side). In this way, if one ship sees a red light approaching from a distance, that ship can be certain that the oncoming vessel is located to her port side, and vice versa for the sighting of an approaching green light. Masthead lights are white and must be placed along the forward-to-aft centerline of the vessel, one each at the forward and aft of the vessel. The aft masthead light is placed higher than the forward masthead light. The appearance of both red and green sidelights simultaneously or both masthead lights in line indicates that the two ships face a risk of head-on collision. Rule 23, 33 U.S.C. foll. § 1602.

characterization of the events.[7]

The district court finally concluded that

> The fault of the M/V Blue Cloud in making her sudden and unexplained turn to starboard and the confusion demonstrated by the second mate of the [BC] who was in charge of her navigation are clear and sufficient explanations for the collision. There being a complete and satisfactory explanation, and there being no outstanding fault of the [OMINA] which apparently caused or contributed to the collision, no fault is attributable to the [OMINA]. *Navigazione Alta Italia v. Keystone Shipping Co.,* 365 F.2d 422 (5th Cir.1966).

Accordingly, BC became liable for the roughly $700,000 of damage to OMINA, as found in the second part of the bifurcated proceeding. After the damages were set, BC moved to reduce the amount of damages to the appropriate level and to substitute a letter of undertaking ("LOU") from the Steamship Mutual Underwriting Association (Bermuda), Ltd. (the "Club") for the St. Paul Mercury corporate surety bond.[8] The court granted the motion to reduce security and substitute the Club for St. Paul.

BC made a timely appeal of the judgment. OMINA's separate appeal of the substitution order followed and was consolidated with BC's appeal. For the reasons stated below, we affirm.

DISCUSSION

BC finds numerous errors in the district court's findings and conclusions. Specifically, BC contests the legal method through

---

[7]BC claimed at trial that OMINA herself made a sudden starboard turn which prompted BC's turn and that both ships could see the other's masthead lights in line.

[8]A letter of undertaking (LOU) is another form of security allowed to secure the release of a vessel in an in rem action under Fed.R.Civ.P. Supp. Rule E(5)(a).

which the district court determined liability for the collision, the underlying factual findings, and the decision of the district court to allow OMINA's claim for damages.  OMINA challenges the substitution of the LOU for the corporate surety bond though it did not raise the arguments below.  These arguments will be dealt with in turn.

A. Standard of Review

This Court reviews conclusions of law made by the district court de novo.  *Dow Chemical Co. v. M/V ROBERTA TABOR,* 815 F.2d 1037, 1042 (5th Cir.1987).  Factual findings will only be overturned if clearly erroneous.  *Id.*

B. The Court's Findings and Conclusions

1. The Application of Rule 14.[9]

The lower court held that because OMINA was never meeting the Blue Cloud on a reciprocal or nearly reciprocal course so as to involve a risk of collision, she had no duty under Rule 14 to make a starboard turn.  Rule 14 provides:

> *Head-on Situation*
>
> (a) When two power-driven vessels are meeting on a reciprocal course or nearly reciprocal courses so as to involve risk of collision each shall alter her course to starboard so that each shall pass on the port side of the other.
>
> (b) Such a situation shall be deemed to exist when a vessel sees the other ahead or nearly ahead and by night she could see the masthead lights of the other in line or nearly in a line and/or both sidelights and by day she observes the corresponding aspect of the other vessel.
>
> (c) When a vessel is in doubt as to whether such a

---

[9]Rule 14, 33 U.S.C. foll. § 1602.

situation exists she shall assume that it does exist and act accordingly.

Thus, at night, should a ship see either both sidelights or both masthead lights in line or nearly in line of another ship, that ship should presume that both ships are on a reciprocal course and alter the course to starboard to avoid collision. The Court concluded that the ships were not on reciprocal courses under Rule 14 because, prior to the time the Blue Cloud made her hard to starboard turn, neither of the vessels had exhibited her red light to the other.

BC argues on appeal that the District Court erred by holding that Rule 14 did not apply to the situation as it existed that night. According to BC, the lower court considered only that both sidelights were not visible in concluding that the two vessels were not on a reciprocal course.[10] BC claims that uncontroverted evidence shows that the masthead lights of both ships were in line or nearly in line and that the two ships were on a collision course.[11] According to BC, OMINA had a duty to alter the course to

---

[10]The court was aware that Rule 14 provided an alternative for deeming ships to be on reciprocal course as noted in the Joint Pretrial Order.

[11]BC points to one relevant record reference, a sketch made on deposition by the lookout stationed on the Omina, that arguably shows that the Omina could see the masthead lights in line or nearly in line. However, the ambiguous sketch also showed that only the green light of BC was visible, indicating that the ships were not on reciprocal courses.

BC additionally claims that the ships were only 2.5 degrees apart and thus on a reciprocal course according to *Farwell's Rules of the Road.* The district court relied on OMINA's radar plottings to find that the vessels in fact remained on *parallel* courses .30 miles apart until BC's turn.

starboard.[12]

We find no error in the court's finding that no risk of collision was presented and its attendant conclusion that Rule 14 did not apply. While the lower court found that the ships were not on reciprocal courses primarily from the fact that neither vessel had exhibited her red (port) sidelight to the other, the court's general finding was that the two ships were not on reciprocal courses and would have safely cleared one another had the BC not made the sharp starboard turn. Implied in that finding is that the masthead lights were not in line or nearly in line. We also note that COLREG Rule 7 deems a risk of collision to be present when the bearing of an approaching vessel does not appreciably change as the range decreases.[13] The record shows that as range decreased, the bearing of the BC changed, indicating that the vessels faced no risk of collision.

We do recognize that the lower court could have made clearer that the ships' positions met none of the scenarios envisioned by Rule 14. However, given the amount of evidence that the ships were not in fact on reciprocal courses and that no risk of collision was presented until BC made its turn to starboard, the lower court's

---

We see no error in the court's reliance on these plottings to conclude that no risk of collision was presented.

[12]BC also argues that alteration of course to starboard was required even if there was doubt as to the existence of possible reciprocal courses under Rule 14(c). However, the record shows no doubt on the part of OMINA, which maintained its course until BC struck it.

[13]Rule 7, 33 U.S.C. foll. § 1602.

lack of specificity is hardly reversible error.  Rule 14 applies when there is a risk of collision.  Since the court specifically found no such risk, OMINA did not violate the rule when it maintained its course.

2. OMINA's culpability in the collision.

BC challenges the lower court's failure to consider possible violations on the part of OMINA before concluding that the OMINA was free of fault.  According to BC, the district court erred as a matter of law by failing to include conclusions of law on whether OMINA violated Rules 2, 6 and 8(a) and (e) before implicitly concluding that OMINA had met its burden of proving under the Pennsylvania Rule that alleged violations of these COLREGS could not have contributed to the collision.

BC alleges that OMINA violated four COLREG provisions:  Rule 2 (the general prudence rule);  Rule 6 (failure to proceed at safe speed to avoid collision);  and Rule 8(a) (failure to take timely action to avoid collision) and (e) (failure to slacken speed to avoid collision).  In *The Steamship Pennsylvania,* 86 U.S. (19 Wall) 125, 22 L.Ed. 148, 151 (1874), the Supreme Court held that where a vessel at the time of collision is in violation of a statutory rule designed to prevent collisions, in order to avoid liability, she must show not only that her violation of the rule did not contribute to the collision but also that it could not have contributed.  Thus, according to BC, the lower court erred by failing to consider OMINA's alleged COLREG violations.

There is a problem with this argument.  BC's statutory

allegations assume that the ships were on a *reciprocal (collision) course,* an assumption contrary to the court's finding.[14]  Since the lower court's finding that the ships were not on reciprocal courses is supported by the record, BC's allegations are without merit.  Without risk of collision, the OMINA would have had no duty to slacken speed, make radio contact, etc., and therefore violated no statutory mandate.  No evidence of statutory violations by OMINA was presented under the circumstances.  Therefore, the district court correctly concluded that OMINA was not at fault in the collision.

Nonetheless, we feel it necessary to discuss one troubling issue of law present in the court's conclusion.  The district court apparently applied the major-minor fault rule, discussed in *Navigazione Alta Italia v. Keystone Shipping Co.,* 365 F.2d 422 (5th Cir.1966).  The district court stated that BC's starboard turn was "clear and sufficient explanation for the collision" and that because there was no "outstanding fault" by OMINA, no fault would be attributed to her.  This suggests that de minimis fault by OMINA could be overlooked.  Under the major-minor rule, where one party's glaring fault sufficiently explains the entire collision, the court can assign all fault for the collision to that party.  *Id.* at 425.

---

[14]For example, BC attacks OMINA's failure to make radio contact before passing within .30 miles as a violation of Rule 2's requirement of prudent seamanship.  BC's authority for this assertion rests on a holding that prudent seamanship requires a vessel to attempt radio contact with an approaching vessel on a reciprocal course.  *G & G Shipping Co., Ltd. of Anguilla,* 767 F.Supp. 398, 411 (D.P.R.1991).  As noted above, the ships were not on reciprocal courses;  thus, Rule 2 and the regulations meant to prevent collisions are inapplicable.

The court need not intensively scrutinize the other ship's actions for contributory fault.

This major-minor rule arose as a corrective to the often harsh divided damages rule, whereby parties who were both at fault in a collision split damages evenly despite the degree of fault. Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 14-4 (2d ed.1994). The Supreme Court rejected the divided damages rule and required use of a comparative fault analysis in *U.S. v. Reliable Transfer Co., Inc.,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975). This Court regularly applies comparative fault in admiralty cases. *Coats v. Penrod Drilling Co.,* 61 F.3d 1113, 1128 (5th Cir.1995); *Pennzoil Producing Co. v. Offshore Exp.,* 943 F.2d 1465, 1469 (5th Cir.1991). The rejection of divided damages and enshrinement of the comparative fault doctrine allows for no application of the major-minor fault rule. *Nunley v. M/V Dauntless Colocotronis,* 727 F.2d 455, 463 (5th Cir.1984). If we did not say it clearly enough before, we say it now: the major-minor fault rule is dead. A de minimis fault rule is contrary to the intent and notion of comparative fault. *See Hercules, Inc. v. Stevens Shipping Co.,* 765 F.2d 1069, 1075 (11th Cir.1985) (discussing effect of *Reliable Transfer* on major-minor rule and similar doctrines). If a party is slightly at fault, that party would be partially liable for the collision.

Despite the lower court's use of the major-minor rule and our holding, remand is unnecessary in the instant case. BC has simply made no meritorious allegations of statutory fault on the part of

10

OMINA. The lower court properly concluded that OMINA was not at fault (statutory or otherwise) though it stated such in the terms of a now-obsolete rule.[15]

3. Distance between BC and OMINA prior to the starboard turn of the BLUE CLOUD.

BC challenges the district's court finding that the vessels were at least .30 miles apart. The district court explicitly relied on OMINA's manual radar plots that showed that the vessels were at least .30 miles apart just prior to BC's turn to starboard.

The court concluded that

The M/V OMINA had maintained radar plotting of the courses and speed of the several vessels at all times and was well aware of her own position and relative positions of the other vessels.

BC and OMINA contest how often these plottings were taken. BC claims that the last plotting was taken fifteen minutes before the collision and OMINA claims that the last one (its fourth radar plot) was taken nine minutes before the crash. BC contests this to show that, contrary to the court's conclusion, OMINA was not aware of its position at all times. BC misstates the record in this instance. OMINA's captain testified to the fourth plot being made nine minutes prior to the collision. This argument lacks merit.

BC also makes a technical argument regarding the turning radius of the BC when put hard to starboard. BC claims that this radius is .24 miles, according to her sea trials. Therefore, the

---

[15]Convincing us of the propriety of our conclusion is another of the district court's findings of fact stating that "[t]he M/V OMINA was free from *any* fault which caused or contributed to the collision."

OMINA must have been within .24 miles when BC made her sharp starboard turn. However, there is no evidence that the BC was hard to starboard. As the district court stated, the only person (BC's quartermaster) who would know whether the BC was hard to starboard was relieved of duty and sent out of the country before his deposition could be taken. Additionally, there is nothing in the record showing that conditions were similar as those conducted at BC's sea trials.

BC has not shown the Court that this finding is clearly erroneous. OMINA made several plots before the collision showing her to be .30 miles from BC and she did not change her course. The court was entitled to accept OMINA's radar plots as accurate. The court's conclusion that the ships were at least .30 miles apart prior to the starboard turn of BC is not a mistake. We will not retry this case on appeal and upset the finding.

4. Sufficiency of distance between the ships prior to BC's starboard turn.

The district court found that

From the moment the M/V BLUE CLOUD and the M/V OMINA commenced navigating with respect to each other, each remained in its original relative position with respect to the boundaries of the designated fairway. The courses of the several vessels were such that if each had held its own course and speed, the vessels would have passed well clear of each other and without incident. There would have been at least 3/10 of a mile distance between the M/V BLUE CLOUD and the M/V OMINA.... *a clear and sufficient distance in all respects.* (emphasis added).

BC makes one technical argument and one hollow argument in attacking the court's finding that the ships would have passed at a clear and sufficient distance. BC argues simply that given the

speed and size of the vessels, the limited distance between them was hardly clear and sufficient. BC claims that the vessels would have closed the distance between them in 7.2 seconds. BC also states that the fact that the collision occurred was compelling evidence of the lack of prudence of OMINA. Ships should not be so close together when possible.

The record demonstrates that while the fairway was narrow, the vessels would have safely passed without BC's sudden turn. As discussed above, the vessels were not on a collision course. That the collision occurred does not mean both parties were imprudent. Such is not the law. The record supports the trial court's finding that the ships would have passed at a clear and sufficient distance.

5. Most likely explanation for the collision.

BC contests the court's finding that the "most likely explanation" was BC's second mate's confusion of the unidentified tanker's red light with the red light of the OMINA. BC claims that the ships' relative positions made it impossible for the second mate to see the tanker's red light. BC also states that their experienced mate would not have made such a mistake. BC maintains that the cause of the accident was a sudden port-to-port turn *by OMINA.* These arguments do not cause us to disturb the lower court's finding.

In our estimation, the court below used its common sense in concluding that confusion of lights was the most likely explanation for the collision. We first note that the district court was not

13

attempting to say with scientific certainty why BC made the sharp turn to starboard, only what the *most likely* reason was. BC stated that it believed OMINA had turned starboard when the evidence showed OMINA had maintained a steady course. If BC saw a red light, it most likely was the tanker's. Even BC's own expert witness offered confusion of red lights as "what happened" on deposition, though at trial, this conclusion changed to "one of the possibilities."

BC presented no evidence other than the testimony of the mate's that OMINA attempted a port-to-port passing. The court found that BC's mate was confused and careless as BC was overtaking the tanker ahead of it. Accordingly, the lower court gave little credit to this testimony. On review, we must give "due regard ... to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.R.Civ.P. 52(a). Doing so, we discern no clear error in the district court's finding.

6. OMINA's recovery of damages.

BC argues that the district court erred in entering judgment against the BC for damages because the OMINA did not file a counterclaim against BC. BC claims that the lack of a formal counterclaim by OMINA deprived BC of sufficient notice of their potential liability exposure and thus prejudiced them. This argument is without merit.

A formal counterclaim is typically necessary to receive damages as part of a limitation of liability action. *British Transport Commission v. U.S.,* 354 U.S. 129, 141, 1109, 1 L.Ed.2d

1234 (1957).  However, as the district court noted in this case, BC signed a stipulation on May 21, 1993, that stated that "*Petitioners [OMINA] have made a claim* against the M/V Blue Cloud, in rem, and her owners, and/or managers, Ahrenkiel Shipping (H.K.) Ltd., *for damages* to the M/V OMINA as a result of a collision between the M/V OMINA and the M/V BLUE CLOUD."  (emphasis added).  OMINA did file a formal claim for damages against BC after the trial on liability. The document was received by the lower court and ruled upon without objection from BC.  Given the stipulation and lack of objection, BC cannot be heard now to argue contrary to the stipulation or to claim lack of notice with regard to a damage claim by OMINA.

As the Eleventh Circuit noted in *Cioffe v. Morris,* 676 F.2d 539 (11th Cir.1982), prejudice involves issues not raised, not demands or prayers for relief.  All of the issues of fault that would have a bearing on damages were raised by the pleadings and were tried.  The lower court did not err in entering the judgment for damages.

OMINA's CONSOLIDATED APPEAL

OMINA, as appellant in this consolidated appeal questions the lower's court's power to substitute a letter of undertaking from the Club in lieu of St. Paul Mercury Insurance Co.'s corporate surety bond then on file.  OMINA also contends that the court erred by substituting a form of security which provides less security than the original bond.  OMINA did not raise these arguments before the district court.  OMINA's sole objection to BC's Motion to Reduce Security reads as follows:

15

Claimants have failed to confer with Petitioners regarding the Motion to Reduce Security. Said Motion fails to address all issues that should be considered by Petitioners and this Court in determining its merit. Accordingly, Petitioners cannot state at present whether they are opposed to Claimants' Motion or not.

Never having heard the substantive arguments made on this appeal, the district court granted the motion to substitute security. BC argues that the Court should not address these arguments. We agree. As this Circuit stated in *F.D.I.C. v. Mijalis,* 15 F.3d 1314, 1327 (5th Cir.1994),

> [I]f a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court. If an argument is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal.

This Court will not disturb the lower court's order substituting forms of security.

## CONCLUSION

For the above reasons, this Court AFFIRMS in their entirety the judgment and orders entered by the district court.

16