UNITED STATES COURT OF APPEALS
For the Fifth Circuit

No. 95-30803

BURMA NAVIGATION CORP.,

Plaintiff - Appellee
Cross-Appellant,

VERSUS

RELIANT SEAHORSE MV, in rem; ZAPATA GULF
MARINE OPERATORS INC.; TIDEWATER MARINE INC.;
TIDEWATER MARINE SERVICE INC., in personam,

Defendants - Appellants
Cross-Appellees.

--------------------------------------------------

ZAPATA GULF MARINE OPERATORS, ET AL,

Plaintiffs - Appellants
Cross-Appellees,

VERSUS

ALASKA M/V, in rem,

Defendants - Appellees
Cross-Appellants.

--------------------------------------------------

PENNZOIL EXPLORATION AND PRODUCTION COMPANY,

Plaintiff - Appellant
Cross-Appellee,

VERSUS

BURMA NAVIGATION CORP., ET AL,

Defendants - Appellees
Cross-Appellants.

Appeals from the United States District Court
For the Eastern District of Louisiana

October 29, 1996

Before REYNALDO G. GARZA, DeMOSS, and PARKER, Circuit Judges.

DeMOSS, Circuit Judge:

In this case, two vessels were unable to successfully navigate the Mississippi River and avoid colliding with one another in the process. The district court found the M/V ALASKA and the M/V RELIANT SEAHORSE to be equally at fault in causing the collision and assessed liability 50% against each ship. After a complete review of the record, we find that sufficient evidence exists to support the district court's findings and we AFFIRM the decision of the district court. The judgment of the district court is, however, modified to reflect the parties' *in rem* and *in personam* claims.

## BACKGROUND

On March 6, 1994, the M/V ALASKA and the M/V RELIANT SEAHORSE collided while attempting to navigate the Southwest Pass of the Mississippi River in heavy fog. The owner of the M/V ALASKA, Burma Navigation Corporation, filed suit against the M/V RELIANT SEAHORSE, *in rem*, and Zapata Gulf Marine Operators, Inc., Tidewater Marine, Inc., and Tidewater Marine Service, Inc., *in personam*. Zapata Gulf Marine and Tidewater Marine sued the M/V ALASKA, *in rem*, and Burma Navigation, *in personam*, for damages arising out of

2

the same collision.  Pennzoil Exploration & Production Company also brought suit against Burma Navigation for damage to cargo carried by the M/V RELIANT SEAHORSE.  Burma Navigation filed third-party claims and cross-claims seeking defense, contribution, and indemnity from the Pennzoil claims.  The cases were consolidated and the parties agreed to a bench trial.  The district court then bifurcated the trial on the issues of liability and damages.

The M/V RELIANT SEAHORSE, a 176-foot long offshore supply vessel, owned by Zapata Gulf Marine, Inc. and operated by Tidewater Marine, Inc., was outbound from the Southwest Pass of the Mississippi River headed toward the entrance/exit channel to the Gulf of Mexico at clutch speed, the slowest available maneuvering speed.  The M/V ALASKA, a 600-foot ocean-going cargo vessel, was inbound traveling full ahead.  The two vessels agreed on a port-to-port passing.  The two ships collided at 8:36 a.m.  The ALASKA struck the RELIANT SEAHORSE about 22 feet aft of her pilothouse near the starboard exhaust stack, impaling the RELIANT SEAHORSE on the ALASKA's bow.  The parties disputed almost all other facts relevant to the collision, such as the exact speed of the ALASKA, course changes of each vessel, the communications between each vessel, and the location of the vessels before and at the time of the collision.

After hearing the testimony and reviewing the evidence presented, the district court found both vessels to be equally at fault and assessed liability 50% against the ALASKA and 50% against RELIANT SEAHORSE.  All parties appealed.

## DISCUSSION

The district court made the following findings and conclusions:

> (1) This was clearly a heavy fog situation wherein visibility was restricted and I am satisfied after listening to further testimony that the captain of the motor vessel RELIANT became disoriented in that particular fog situation;
>
> (2) the motor vessel ALASKA was proceeding at an excessive rate of speed, given the circumstances and weather conditions then existing;
>
> (3) the motor vessel ALASKA's course recorder does not have a four and a half degree error, no course change from full ahead was ever recorded on this course recorder. To believe Pilot Durabb when he indicated that he ordered 350 when coming on board, whether there was or was not a four and a half degree error, it would have to have been recorded at the time and that does not appear on that course recorder.
>
> As to that aspect, the Court is convinced that the vessel, up until 8:32, was on a course of 340 or 345 which would have put that vessel in a different position then [sic] is testified to by Durabb. Further, Durabb did not maintain sufficient radar contact or radar observation during the period of time;
>
> (4) the Court finds that Webb is not credible with respect to his actions and entry of his Loran points. I am unconvinced that Captain Webb made accurate or correct entries nor am I satisfied with respect to his version of the events as related by him. I am satisfied that Webb clearly became disorientated in the fog and make that specific factual finding;
>
> (5) Web's [sic] activity in approaching the number one sea buoy clearly put him in a situation where he had to take evasive maneuvers to avoid the number one buoy and after rounding the number one buoy, then chose the course of conduct which would put him in a situation perpendicular to the then appearing motor vessel ALASKA;

4

(6) [t]he Court clearly finds that Futcher is credible with respect to reporting the ship being on the port bow the entire time. The Court believes that for Mr. Futcher to have testified contrary would have been for him to disregard his own safety and this Court is not convinced that Futcher would have manufactured and/or fabricated his testimony to his detriment.

(7) This accident did occur or likely occurred on the western side of the channel. I reach this conclusion based upon no finding of a four and a half degree error in this particular course recorder.

(8) [T]he Court finds that the cases cited by the defendant, specifically one case of Judge Rubin, *Indian Towing v. The Tug Westerly W*, 264 F. Supp. 892 [E.D.La. 1967], and the other cases cited therein are factually distinguishable. The *Westerly W* saw the approaching vessel and even grounded her tow into the trees. Therefore, that tug absolutely took every possible maneuver available to avoid the pending accident. In this case, however, Captain Webb, upon rounding the number one sea buoy, instead of either stopping, slowing, or maintaining additional contact, chose to go to a port maneuver which put his vessel across the bow of the motor vessel ALASKA.

In this case, the Court feels that Webb made no sight of the ALASKA and if his version is correct, never got any reports from Futcher. However, the Court disregards that testimony and believes that Futcher was giving reports, although Captain Webb apparently did not receive or acknowledge same.

The same can be said with respect to Pilot Durabb, although Pilot Durabb may believe that he ordered a course change upon entry on to the vessel, I am convinced that he took no appropriate measures to ensure if the order was given that it in fact was executed.

Having made all of these findings, the Court must therefore decide if one vessel is solely or exclusively at fault and if not what degrees of fault are attributable to each vessel. After listening to the entire testimony and finding the actions of both vessels equally caused and contributed to this accident, when added one on top

5

of the other, the Court finds that both vessels in this collision were equally liable, at fault, and therefore assess liability of these vessels specifically at fifty percent.

Appellants RELIANT SEAHORSE, Zapata Gulf Marine, and Tidewater Marine (collectively "Tidewater") argue that the ALASKA (1) failed to proceed along the course of the channel as near to the outer limit of the channel on her starboard side as is safe and practicable; (2) improperly traveled at full speed in poor visibility; (3) failed to properly check the radar; (4) proceeded through the channel at an excessive speed; and (5) failed to have her lookout immediately report the sighting of the RELIANT SEAHORSE. According to Tidewater, these acts violated the Navigation Safety Regulations, 33 C.F.R. § 164, and the Inland Navigational Rules, 33 U.S.C. §§ 2001-2038, in particular, Rules 9(a)(i) and 9(a)(ii) - the Narrow Channel Rule.[1]

Tidewater maintains that the district court failed to make specific findings as required by FED. R. CIV. P. 52(a) as to these violations and, as a result, improperly apportioned fault in this case. *Interfirst Bank of Abilene, N.A. v. Lull Mfg.*, 778 F.2d 228, 234 (5th Cir. 1985). Tidewater also contends *Marine Transport Lines, Inc. v. M/V TAKO INVADER*, 37 F.3d 1138, 1143 (5th Cir. 1994), requires the district court to decide whether the Narrow Channel Rules applied and whether these rules affected the

---

[1] The Narrow Channel Rule, 33 U.S.C. § 2009(a)(i), states:

A vessel proceeding along the course of a narrow channel or fairway shall keep as near to the outer limit of the channel or fairway which lies on her starboard side as is safe and practicable.

6

apportionment of fault under the facts presented. The absence of sufficient findings on these issues undermined the district court's application of the **Pennsylvania Rule**.[2]

Appellees ALASKA and Burma Navigation (collectively "ALASKA") argue that Tidewater did not object to the district court's oral findings and conclusions nor did they file post-judgment motions asking the court to make more specific findings. As such, ALASKA contends that Tidewater raises this Rule 52(a) specificity argument for the first time on appeal and, therefore, the argument is not properly before this Court. **Miller v. Bittner**, 985 F.2d 935, 940-41 (8th Cir. 1993) (challenges to the sufficiency of the district court's findings will not be considered on appeal in the absence of a timely Rule 52 motion).

Even if this Court reaches Tidewater's sufficiency arguments, the ALASKA contends that the arguments lack merit and are merely an attempt to circumvent the clearly erroneous standard of review. The ALASKA argues that Rule 52 only requires the district court to make findings that show a clear understanding for the basis of its decision. **Chandler v. City of Dallas**, 958 F.2d 85, 89 (5th Cir. 1992), *cert. denied*, 114 S. Ct. 1386 (1994). Further, the district court's findings need only be specific enough to provide a basis for the judgment and for meaningful appellate review. *Id.* The ALASKA contends that the district court's findings provide a

---

[2] In **The Pennsylvania**, 86 U.S. (19 Wall.) 125, 136 (1873), the Supreme Court held that when a party violates a rule or regulation enacted to prevent collisions, the burden of proof shifts to the party who violated the rule to show that the violation did not cause the collision.

sufficient basis for appellate review by orally summarizing the testimony of the major fact witnesses and experts and indicating which testimony and evidence it found credible.

Appellees further contend that *The Pennsylvania* rule is a burden of proof rule and is not applicable to apportionment of liability. *Pennzoil Producing Co. v. Offshore Express, Inc.*, 943 F.2d 1465, 1472 (5th Cir. 1991). *United States v. Reliable Transfer*, 421 U.S. 397, 95 S. Ct. 1708 (1975), holds that the apportionment of liability must be determined according to the comparative fault of the parties. According to the ALASKA, the district court properly applied *Reliable Transfer* to the present case and correctly refused to consider *The Pennsylvania* rule.

*A. Specificity/Sufficiency under Rule 52*

Tidewater's challenge to the specificity of the district court's fact findings under Rule 52(a) appears to be a thinly veiled attempt to turn a sufficiency-of-the-evidence argument into a legal challenge.[3] Assuming we were to "take the bait," Rule 52(a) provides "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." FED. R. CIV. P. 52(a). Rule 52(a) "exacts neither punctilious detail nor

---

[3] "When findings of fact are made in actions tried without a jury, the sufficiency of the evidence supporting the findings may be later questioned whether or not in the district court the party raising the question objected to the findings, moved to amend them, or moved for partial findings." FED. R. CIV. P. 52(b).

8

slavish tracing of the claims issue by issue and witness by witness." *Schlesinger v. Herzog*, 2 F.3d 135, 139 (5th Cir. 1993) (internal quotations omitted). In fact, Rule 52 requires the district court to simply issue findings with sufficient detail to enable the appellate court to consider the findings under the applicable reviewing standard. *Id.*; *Collins v. Baptist Memorial Geriatric Ctr.*, 937 F.2d 190, 194 (5th Cir. 1991), *cert. denied*, 502 U.S. 1072 (1992). Rule 52 is satisfied if the district court's findings give the reviewing court a clear understanding of the factual basis for the decision. *Interfirst Bank of Abilene*, 778 F.2d at 234. Upon reviewing the district court's oral findings and conclusions, we have a clear understanding of the factual basis for the decision and we hold that the district court sufficiently specified its findings for purposes of satisfying Rule 52(a).

Finding no legal error with the specificity of the district court's findings and conclusions, we are then asked to determine whether sufficient evidence exists to support those findings. We may not set aside the district court's findings of fact unless those findings are clearly erroneous. *Gaspar v. Dowell Div., Dow Chem. Co.*, 750 F.2d 460, 462 (5th Cir. 1985).

When, as in this instance, a case turns on credibility assessments, "Rule 52(a) demands even greater deference to the trial court's findings." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985). "Where the court's finding is based on its decision to credit the testimony of one witness over that of another, `that finding, if not internally inconsistent, can

9

virtually never be clear error.'" **Schlesinger**, 2 F.3d at 139 (quoting **Anderson**, 470 U.S. at 575).  The district court orally summarized the testimony of the major fact and expert witnesses and made specific credibility assessments of those witnesses.  The district court then found specific instances of fault on the part of each vessel which contributed to the collision.  After a complete review of the record, we find sufficient evidence exists to support the district court's findings.  Consequently, we are convinced that the district court did not clearly err in assessing fault at 50% for each vessel.

Furthermore, appellees correctly state that **The Pennsylvania** rule "does not determine a party's ultimate share of liability for a loss."  **Offshore Express**, 943 F.2d at 1472.  **Reliable Transfer** requires that the courts use a comparative fault scheme for maritime matters.  **Id.** (citing **Reliable Transfer**, 421 U.S. 397, 95 S. Ct. 1708).  As such, the district court committed no legal error by using comparative fault principles in assessing fault in this case.


*B. The Narrow Channel Rules*

Tidewater contends that the district court erred as a matter of law in dividing liability equally between the parties because vessels crossing the centerline in violation of the Narrow Channel Rule are considered at fault for all resulting damages.  **State of Louisiana v. M/V TESTBANK**, 564 F. Supp. 729 (E.D. La. 1983), *aff'd*, 767 F.2d 916, 917 (5th Cir. 1985).  Based on the Narrow Channel

Rules, Tidewater contends that it was entitled to presume that the ALASKA would keep to her own side and would pursue the customary track of vessels in the channel.

The appellees ALASKA and Burma Navigation contend that, assuming the ALASKA violated Rule 9, violations of this navigational rule have never constituted greater than 50% negligence as a matter of law nor have such violations established *per se* liability. *M/V TESTBANK*, 564 F. Supp. 729. Appellees further point out that **Reliable Transfer** makes allocation of fault in maritime collision cases a fact question. *See **Southern Natural Gas Co. v. Pontchartrain Materials, Inc.***, 711 F.2d 1251, 1259 (5th Cir. 1983). In support of the district court's liability allocation, the appellees note that the district court found (1) that Captain Webb lacked credibility; (2) that Webb became disorientated in the heavy fog; (3) that Webb turned his vessel to port across the bow of the oncoming ALASKA while taking measures to avoid the number one buoy; and (4) that the Coast Guard report showed that the SEAHORSE's turn was the primary cause of the collision.

Finally, appellees argue on their cross appeal, that the district court clearly erred in finding that the ALASKA was on the west side of the channel and in allocating 50% fault to the ALASKA. The appellees base their contention on the facts that (1) the channel is only 600 feet wide and (2) the mate of the RELIANT SEAHORSE, Futcher, testified that the SEAHORSE was running the western edge of the channel with the ALASKA 300 feet to her east.

This testimony put the ALASKA to the east of the center of the channel. Appellees maintain that the SEAHORSE's mate's position fix, photographs of the ALASKA taken minutes after the collision, and the debris caused by the collision reflect that the ALASKA was on the eastern side of the channel. Therefore, appellees maintain that the district court clearly erred in assessing 50% fault to the ALASKA in this case.

Vessels navigating the Mississippi River must adhere to the Narrow Channel Rules (Rules 9 and 14) unless otherwise agreed. *See* ***Marine Transport***, 37 F.3d at 1143-44. However, a vessel's position on one side or the other of the center of the river does not conclusively establish that a rule was violated. *Id.* at 1145. We have previously held that a downbound vessel's right-of-way under Rule 9 is conditional in that the downbound vessel, in this case the RELIANT SEAHORSE, must have proposed a manner and place for passage and initiated maneuvering signals under Rule 34(a)(i). *Id.* at 1144. When the downbound vessel exercises its authority under Rule 9(a)(ii), the upbound vessel must give way. 33 U.S.C. § 2009(a)(ii); *and see* ***Marine Transport***, 37 F.3d at 1144.

In this case, the district court specifically found that Captain Webb did not maintain contact with the ALASKA and, in fact, chose a course of conduct which put the RELIANT SEAHORSE in a path perpendicular to the oncoming vessel. Although the district court did not expressly delineate the various rules violations, its fact findings are more than sufficient to show that its apportionment of fault was based on rules violations by both vessels. Even though

12

the district court found the ALASKA to be on the western side of the river, a technical violation of Rule 9(a)(i), this finding does not support the imposition of 100% liability on the ALASKA. The district court also found that Captain Webb did not stop, slow his vessel, or maintain additional contact with the ALASKA. Instead, Webb chose to initiate a port maneuver which put his vessel across the bow of the oncoming ALASKA. The district court also found that Webb did not see the ALASKA and apparently did not receive or acknowledge his mate's reports of the location of the oncoming vessel. These findings support its apportionment of fault at 50% for each vessel. After carefully reviewing relevant portions of the record itself, we are satisfied that the district court's apportionment of fault is not clearly erroneous.

*C. Other Claims*

The parties agree that the judgment should be amended to reflect *in personam* liability as to Burma Navigation, Zapata Gulf Marine, and Tidewater Marine as well as *in rem* liability as to the ALASKA and the RELIANT SEAHORSE. We agree. Therefore, we amend the judgment of the district court to reflect both *in rem* and *in personam* liability in this case.

Next, Tidewater contends that Burma Navigation "manufactured" a 4.5 degree error in the course recorder to show that the ALASKA was on the east side of the channel in an effort to avoid liability. Tidewater argues that they incurred substantial costs in repudiating the fabricated course recorder error and that the

13

district court erred in refusing to sanction Burma Navigation for this fabrication.

ALASKA and Burma Navigation contend that Tidewater's argument is frivolous and presents nothing for this Court to review because no Rule 11 motion was ever made by Tidewater. They also argue that, even if the appellants properly filed a motion in accordance with FED. R. CIV. P. 11(c)(1), the sanctions issue is moot because the case has been tried, no objections to ALASKA's theories were made, and Rule 11 requires that a written motion be served on the offending party.

In their reply brief, Tidewater concedes that the sanctions issue is not properly before this Court. As such, it is not necessary for this court to reach the issue of sanctions.

## CONCLUSION

Sufficient evidence exists to support the district court's findings in this case. Further, the district court committed no legal error in assessing fault at 50% for each vessel. All parties agree that the district court erred in entering judgment only *in rem* when the suit also contained *in personam* claims. Therefore, the judgment of the district court is recast to reflect the *in personam* claims. Finally, appellants admit in their reply brief that the sanctions issue was not raised below. As such, we do not reach the sanctions issue.

For the foregoing reasons, the judgment of the district court is modified to reflect the *in rem* and *in personam* claims and, in all other respects, the judgment is **AFFIRMED**.