UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-31268
_____


HAL ANTILLEN N V; HOLLAND AMERICA LINE WESTOURS INC,
                                    Plaintiffs-Appellees,


v.


MOUNT YMITOS MS, Her engines, tackle, furniture, apparel, etc.,
              BLUE EMERALD SHIPPING CO;
      KASSOS MARITIME ENTERPRISES LTD In Personam;
          ASTROLABE SHIPPING LTD, In Personam,
                                    Defendants - Appellants,


_____


      ASTROLABE SHIPPING LTD; BLUE EMERALD SHIPPING LTD;
              KASSOS MARITIME ENTERPRISES LTD;
          MOUNT YMITOS MV, for exoneration from or
                  limitation of liability,
                                    Plaintiffs - Appellants,


v.


              HAL ANTILLEN NV, ET AL.,

                                    Claimants,


      HAL ANTILLEN NV; HOLLAND AMERICA LINE WESTOURS, INC.,
                                    Claimants - Appellees,


_____


      ASTROLABE SHIPPING LTD; BLUE EMERALD SHIPPING LTD;
              KASSOS MARITIME ENTERPRISES LTD;
                                    Plaintiffs - Appellants,


v.


              NOORDAM MV; IN REM;

HAL ANTILLEN NV, OWNER, IN PERSONAM

                              Defendants - Appellees,

———————————————————

V A O EXPORTKHLEB; ROSSIYA INSURANCE COMPANY LTD OF MOSCOW,

                              Plaintiffs - Appellants,

v.

NOORDAM MV, its tackle, etc. in rem;
HAL ANTILLEN N V;
HOLLAND AMERICA LINE WESTOURS, INC., in personam,

                              Defendants - Appellees.

———————————————

98-30306

———————————————

HAL ANTILLEN N V; HOLLAND AMERICA LINE WESTOURS INC,

                              Plaintiffs - Appellees'

v.

MOUNT YMITOS MS, Her engines, tackle, furniture, apparel, etc.,
in rem; BLUE EMERALD SHIPPING CO; KASSOS MARITIME
ENTERPRISES LTD, In Personam;
ASTROLABE SHIPPING LTD, In Personam,

                              Defendants - Appellants,

———————————————————

ASTROLABE SHIPPING LTD; BLUE EMERALD SHIPPING LTD; KASSOS
MARITIME ENTERPRISES LTD; MOUNT YMITOS MV, for exoneration
from or limitation of liability,

                              Plaintiffs - Appellants,

v.

2

HAL ANTILLEN N V; ET AL

Defendants,

HAL ANTILLEN N V; HOLLAND AMERICA LINE WESTOURS, INC,

Claimants - Appellees,

_____

ASTROLABE SHIPPING LTD; BLUE EMERALD SHIPPING LTD; KASSOS MARITIME ENTERPRISES LTD,

Plaintiffs - Appellants,

v.

NOORDAM MV, in rem; HAL ANTILLEN N V, owner, in personam,

Defendants - Appellees,

_____

YVONNE CLAIBORNE HUMPHREYS, individually and on behalf of all passengers aboard the M/V NOORDAM on 11/6/93,

Plaintiff,

v.

HAL ANTILLEN N V; ET AL,

Defendants,

HAL ANTILLEN N V; HOLLAND AMERICA LINE WESTOURS INC,

Third-party plainitffs - Appellees,

v.

MOUNT YMITOS MS, her engines, tackle, furniture, apparel, etc., in rem; BLUE EMERALD SHIPPING LTD; KASSOS MARITIME ENTERPRISES LTD; ASTROLABE SHIPPING LTD,

Third-party defendants - Appellants,

_____

**V A O EXPORTKHLEB; ROSSIYA INSURANCE COMPANY LTD OF MOSCOW,**
**Plaintiffs - Appellants,**

**v.**

**NOORDAM MV, its tackle, ect., in rem; HAL ANTILLEN N V;**
**HOLLAND AMERICA LINE WESTOURS INC, in personam,**
**Defendants - Appellees.**

_____

**Appeals from the United States District Court**
**for the Eastern District of Louisiana**
_____

**July 30, 1998**

Before JONES and SMITH, Circuit Judges, and SHAW, District Judge.[*]

EDITH H. JONES, Circuit Judge:

Appellants Astrolabe Shipping Ltd., Blue Emerald Shipping Ltd., and Kassos Maritime Enterprises Ltd., individually and as claimants of the M/V MOUNT YMITOS and the MOUNT YMITOS, _in rem_ (hereinafter collectively referred to as "appellants" or "the MOUNT YMITOS") appeal the decision of the district court, after a trial to the bench, which apportioned liability against them for a collision in the Southwest Pass south of New Orleans. We reverse the district court's finding that there existed a custom of passing starboard to starboard in the waterways in which the collision occurred. Although as to the court's other findings and conclusions we find no reversible error, we must remand to allow

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

4

the district court the opportunity to reapportion liability in light of this modification.

## FACTUAL BACKGROUND

As appellees Hal Antillen N.V. and Holland America Line Westours, Inc. (hereinafter collectively referred to as "appellees" or "the NOORDAM") state, this case turns on a turn. On the night of November 6, 1993, at approximately 8:40 p.m., the NOORDAM, a 33,933 ton passenger liner, and the MOUNT YMITOS, a 33,186 ton cargo ship, collided in the Southwest Pass, a shipping lane south of New Orleans, Louisiana. The waters in which the collision occurred are governed by navigation "traffic laws" known as COLREGS, 33 U.S.C. § 1602 *et seq.* (International Regulations for Preventing Collisions at Sea, 1972).

The NOORDAM was inbound heading northward, returning from a tour of the Caribbean. The MOUNT YMITOS was outbound heading southward, leaving for a trip to St. Petersburg, Russia. The MOUNT YMITOS was in the shipping lane to the east of the NOORDAM; the vessels were starboard side to starboard side. The NOORDAM did not become aware of the MOUNT YMITOS's position until 90-120 seconds before the collision. Initially, the MOUNT YMITOS was off the NOORDAM's starboard side showing only green lights to the NOORDAM.[1]

---

[1] A ship has green lights on her starboard side and red lights on her port side for identification. Therefore, when one approaches a ship head-on, one sees both green and red lights. If one sees only the starboard side of a ship, one would see only

The NOORDAM, therefore, could have concluded that the ships would safely make a starboard-to-starboard pass. However, shortly thereafter, the MOUNT YMITOS made a sudden starboard turn at high speed. Instead of seeing green lights, the NOORDAM now saw only red lights. In order to avoid the collision, the NOORDAM made a hard turn to port, but it was too late. The vessels collided.

The district court conducted a nine day bench trial to determine fault. The court's factual findings were reached with considerable difficulty:

> All areas of this litigation have been hotly contested and not even the location of the impact could be agreed to by counsel for the parties. If the Court accepted the position forwarded by each side, this collision would have never happened[;] in fact, there would have been approximately one mile to spare. Unfortunately, that is not the case and this Court has been put in the uncomfortable posture of making critical factual decisions based upon conflicting and limited evidence. Credibility of the witnesses and the credibility of the vessels' documentation were the deciding factors for the Court in this litigation.

The court apportioned 90% of the fault to the MOUNT YMITOS and 10% to the NOORDAM. The MOUNT YMITOS timely appealed.[2]

green lights.

[2] The appellants filed this case originally as an interlocutory admiralty appeal under 28 U.S.C. § 1292(a)(3) from the district court's interlocutory judgment on liability entered on November 29, 1996. After full briefing and oral argument before this court, the trial of the damages portion of the case proceeded in the district court. On March 31, 1998, the district court entered judgment as to the amount of damages thereby entering final judgment in this action. At the parties' request and because the final judgment does not raise new issues in this appeal, the record

6

### DISCUSSION

### 1.  Standard of Review

A district court's findings of fact are reviewed for clear error.  *See* FED. R. CIV. P. 52(a)*; Burma Navigation Corp. v. RELIANT SEAHORSE MV*, 99 F.3d 652, 656-57 (5th Cir. 1996).  "Where the court's finding is based on its decision to credit the testimony of one witness over that of another, 'that finding, if not internally inconsistent, can virtually never be clear error.'" *Id.* at 657.  Questions of negligence, proximate cause, and allocation of fault are normally factual questions.  *See id.*

### 2.  Discussion

### A.  Custom of starboard to starboard passing

The district court found that in the area in which the collision occurred, there exists a custom of passing starboard to starboard.  MOUNT YMITOS along with the Associated Branch Pilots, appearing as *amicus curiae,* argue that the district court erred by declaring a custom of starboard to starboard passing in the area of the Southwest Pass.  We agree.

As a general matter, "[c]ourts do not favor giving effect to local customs involving deviations" from the rules of

in this case has been supplemented to include the March 31, 1998, judgment and the district court's Order and Reasons.  The actions have been consolidated, and this appeal is now from a final judgment.

7

navigation, and they make an exception only when the customs "are firmly established, and well understood." *The GIOVE*, 27 F.2d 331, 332 (5th Cir. 1928). "A custom will be recognized only if it does not conflict with the rules of navigation. Custom that contradicts a statutory rule of navigation will not be enforced." 2 Thomas J. Schoenbaum, Admiralty and Maritime Law § 14-2, at 260-61 (1994). The COLREGS and other navigational statutes are binding enactments that must be adhered to closely. *See id*. at 256. COLREG 14 provides that vessels will ordinarily pass port to port. Because this collision occurred within an area governed by the COLREGS, the superposition of a starboard-to-starboard passing "custom" could be confusing.[3] Moreover, the custom found by the district court in this case is not published. There is highly contradictory testimony concerning the existence or nonexistence of this alleged custom in this waterway. Accordingly, we hold that the district court clearly erred by finding a custom of passing starboard to starboard, and we reverse on this issue. The district court, however, declined to assess liability based upon its conclusion that the MOUNT YMITOS failed to follow this alleged local custom.

---

[3] Even though the finding of a "custom" does not have the force of law, invariably applicable to each case, *see Canal Barge Co. v. China Ocean Shipping Co.*, 770 F.2d 1357, 1361 (5th Cir. 1985), we are concerned lest the district court's finding of a custom in dubious circumstances like these may take on a life of its own.

The court's fault findings principally depend upon the applicability or inapplicability of the COLREGS to this fact situation. Our disagreement with the court's finding of a custom will not impugn its ultimate judgement.

## B. Applicability of the COLREGS

Applying the COLREGS, the district court found that the MOUNT YMITOS was overwhelmingly responsible for the vessels' collision because the MOUNT YMITOS violated COLREG 7(b) (proper use of radar equipment); COLREG 2 (responsibility and good seamanship); COLREG 8 (failure to take action to avoid collision); and COLREG 17 (failure to maintain course and speed or make other passing arrangements with the NOORDAM). *Compare Acacia Vera Navigation Co. v. Kezia, Ltd.*, 78 F.3d 211 (5th Cir. 1996).

In assessing the NOORDAM's responsibility for the collision, the district court ruled that "the NOORDAM should have kept a better lookout both visually and with the highly sophisticated equipment onboard." The court then concluded that the NOORDAM's "one failing" was that it had violated COLREG 7(b) because it failed to use her radar system properly to take advantage of an early warning of the MOUNT YMITOS's approach and take evasive maneuvers to avoid the collision.

MOUNT YMITOS contends that the district court erred at a minimum by not finding that because the NOORDAM had not maintained

9

a proper visual lookout, she also violated COLREG 5.[4]  Although
this is peculiar, we find no reversible error, as the court decided
that the NOORDAM's failure to maintain a proper lookout was not a
proximate cause of the collision:

> The Court holds that NOORDAM should have kept a
> better lookout both visually and with the highly
> sophisticated equipment onboard. . . . The Court does not
> believe that this was the proximate cause of the
> collision; however, the Court is satisfied that if
> NOORDAM had kept a better lookout, visually and through
> ARPA/radar, she would have been aware of the location and
> maneuvers of MOUNT YMITOS.

After reviewing the record, we cannot say that the district court
clearly erred in concluding that the NOORDAM's mistakes were not a
proximate cause of the collision.  *See Burma Navigation Corp.,* 99
F.3d at 657.  There is sufficient evidence to support the district
court's conclusion that the proximate cause of the collision was
the poor seamanship of the MOUNT YMITOS and her imprudent turn to
starboard moments before the collision.  *See Acacia Vera*, *supra*.

By the same token, the court's failure to find other
COLREG violations on the part of the NOORDAM is also supported by
the record.  For instance, we decline to disturb the district
court's implicit finding that the NOORDAM did not violate COLREG
14.  The position of the two ships in this case was determined only
after the district court was "put in the uncomfortable posture of

---

[4]  COLREG 5 mandates that all vessels "at all times maintain
a proper look-out . . . so as to make a full appraisal of the
situation and the risk of collision."

10

making critical factual decisions based upon conflicting and limited evidence," and we do not find clear error in its conclusions.

### C.  Apportionment of Liability

MOUNT YMITOS next asserts that the court misapplied principles of comparative fault.  In maritime collision cases, the court must allocate liability proportionate to the comparative degrees of the parties' fault.  *See United States v. Reliable Transfer Co.*, 95 S. Ct. 1708, 1715-16 (1975).

The court apportioned 90% of the fault to the MOUNT YMITOS and 10% to the NOORDAM.  It based this conclusion on its evaluation of the testimony of numerous witnesses, the NOORDAM's ship logs, and the fact that the log books of the MOUNT YMITOS had been significantly altered.  *See Andros Shipping Co. v. Panama Canal Co.*, 184 F. Supp. 246, 259 (D.C.Z. 1960) ("The unexplained alteration of a ship's record of maneuvers 'not only cast[s] suspicion on the whole case of the vessel, but creates a strong presumption that the erased matter was adverse to her contention.'" (quoting *The Chicago*, 94 F.2d 754, 762 (9th Cir. 1937))).  A thorough review of the record is persuasive that the district court did not misapply the principles of comparative fault, but its erroneous finding of a starboard-to-starboard passing custom may

11

have influenced the allocation.[5]    See <u>Hellenic Lines, Ltd. v.</u> <u>Prudential Lines, Inc.</u>, 730 F.2d 159 (4th Cir. 1984).

**CONCLUSION**

For the foregoing reasons, we reverse the district court's finding of a custom of passing starboard to starboard in the waterways in which the collision occurred.  The judgment is **VACATED** and **REMANDED** to afford the district court the opportunity to reapportion liability.

**VACATED** and **REMANDED**.

ENDRECORD

---

[5]  MOUNT YMITOS also objects to the district court's refusal to admit evidence of the conclusions reached after investigations by the Coast Guard, the National Transportation Safety Board, and the Dutch NSI.  There was no abuse of discretion, however, given that no rule requires admission of these reports.

12

JERRY E. SMITH, Circuit Judge, dissenting:

I agree with the panel majority's well-reasoned conclusion that no custom of starboard passage exists. But I disagree with the panel majority's endorsement of the district court's conclusion that COLREG 14 was not applicable in this situation. The COLREGS govern the three basic proximity situations: overtaking (rule 13), head-on (rule 14), and crossing (rules 15-17). No one argues that this was an overtaking situation. And the district court did not err in its conclusion that the MOUNT YMITOS's failure to maintain course precluded it from claiming the privilege of a stand-on vessel in a crossing situation. We are therefore left with COLREG 14 or nothing.

The district court and the panel majority have chosen the "nothing" option. The district court found that "the instant collision presented a passing situation," and thus that the COLREGS did not apply.

I am unaware of any other case that has propounded the "passing situation" alternative to the statutory COLREGS. Certainly, ships traveling in opposite directions may pass one another with miles to spare, and never navigate with respect to one another. But Congress has mandated that "[w]hen two power driven vessels are meeting on reciprocal or nearly reciprocal courses so as to involve risk of collision each shall alter her course to

13

starboard so that each shall pass on the port side of the other."
COLREG 14.

There can be no doubt that these ships were on "nearly reciprocal courses so as to involve risk of collision." Roughly twenty minutes before the collision, MOUNT YMITOS and NOORDAM were traveling at 170 degrees and 325 degrees, respectively: nearly reciprocal north-south courses, angled slightly toward one another.[6] The district court specifically found that when the vessels were about 2½ miles apart, a computerized navigation system determined them to be "on a collision course with a CPA [Closest Point of Approach] of less than 600 feet." When two vessels, each weighing tens of thousands of tons, are on nearly reciprocal courses so as to miss each other with only a vessel length or two to spare, they are in a proximity situation to which the COLREGS apply.

It is immaterial that the vessels may have been unaware of each other's presence. Each vessel's negligent failure to fulfill her duty under the COLREGS gives rise to liability, regardless of the cause of the negligence. Courts have always required vessels that should have been aware of each other to navigate with respect

---

[6] These angling courses *could* be interpreted as presenting a crossing situation. In that case, the result would be the sameSSthe vessels effectively would be required to effect a port-to-port passage, but liability for their failure to do so would be placed primarily upon the give-way vessel, in this case the NOORDAM. *See* rule 15.

to one another.[7]  Both NOORDAM and MOUNT YMITOS must be held liable insofar as they failed to effect a port-to-port passage, in accordance with their duties under the COLREGS.

Because I cannot agree that this proximity situation was not governed by the COLREGS, I respectfully dissent from Judge Jones's well-written opinion.

---

[7] *See, e.g., Oliver J. Olson & Co. v. Luckenbach S.S. Co.*, 279 F.2d 662, 671 (9th Cir. 1960) (vessels "saw or should have seen" each other's sidelights).