IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 98-20630
_____

THE FOLGER COFFEE COMPANY; GULF
INSURANCE CO.,

                                                 Plaintiffs-Appellants,

versus

OLIVEBANK; CHARMAIN SHIPPING, INC.;
SAFBANK LINE LIMITED; ANDREW WEIR
SHIPPING LIMITED; LYKES BROTHERS
STEAMSHIP COMPANY, INC.,

                                                 Defendants-Appellees.

_____
GULF INSURANCE COMPANY,

                                                 Plaintiff-Appellant,

v.

M/V OLIVEBANK; CHARMAIN SHIPPING,
INC.; SAFBANK LINE LIMITED,

                                                 Defendants-Appellees.

_____
ASSOCIATED MARINE UNDERWRITING
AGENCY; SOUTH AFRICAN EAGLE
INSURANCE COMPANY; CARGO UNDER-
WRITING AGENCY; AEGIS INSURANCE
COMPANY LIMITED; MUTUAL & FEDERAL
INSURANCE COMPANY LIMITED; CESAM;

UNDERWRITERS OF LLOYD'S; HENRY
VOET-GENICOT BVBA; CHUBB & SON, INC.;
MARINE OFFICE OF AMERICA CORPORA-
TION; SUN ALLIANCE GENERAL
INSURANCES; SUN ALLIANCE INTER-
NATIONAL LIMITED; ALEXANDER &
ALEXANDER (ACTING ON BEHALF OF
LLOYD THOMPSON); COMMERCIAL UNION
ASSURANCE COMPANY PLC; UNDER-
WRITERS OF AMSTERDAM BOURSE AND
OTHER UNDERWRITERS; CIGNA INSURANCE
CO. OF EUROPE SA NV/CIGNA PROPERTY &
CASUALTY INSURANCE COMPANY OF
NORTH AMERICA; CEEMIS (ACTING ON
BEHALF OF UNDERWRITING MANAGEMENT
SERVICES); PACIFIC EMPLOYERS
INSURANCE COMPANY,

          Plaintiffs-Appellants,

versus

M/V OLIVEBANK, her engines, boilers, tackle,
etc., in rem; CHARMAIN SHIPPING, INC.;
ANDREW WEIR SHIPPING LIMITED;
SAFEBANK LINE LTD.; LYKES BROTHERS
SHIPPING CO., INC.; BLUE ANCHOR LINES,
INC.; BLUSHIP LTD.,

          Defendants-Appellees.

_____

INTERCARGO INSURANCE COMPANY;
FIREMAN'S FUND INSURANCE COMPANIES
(NEW YORK); FIREMAN'S FUND
INSURANCE COMPANIES (CHICAGO),

          Plaintiffs-Appellants,

versus

M/V OLIVEBANK, her Engines, Boilers, Tackle, etc., in rem; CHARMAIN SHIPPING, INC.; ANDREW WEIR SHIPPING LIMITED; LYKES BROTHERS SHIPPING CO., INC; ICON CARRIERS,

Defendants-Appellees.

_____

Appeals from the United States District Court
Southern District of Texas

_____

February 3, 2000

Before FARRIS[1], WIENER, and STEWART, Circuit Judges.

JEROME FARRIS, Circuit Judge.

In this admiralty and maritime appeal, Folger Coffee Co. and its insurer, Gulf Insurance Company, seek to reverse the district court's judgment that (1) the vessel M.V. Olivebank is entitled to use general average on a salvage lien and (2) that Folger Coffee and Gulf Insurance owe their proportional share to the general average fund. We affirm.

**BACKGROUND**

The M.V. Olivebank left the Port of Durban, South Africa on June 12, 1996, with cargo that included granite blocks, steel wire and earth moving equipment. On

_____

[1] Circuit Judge of the Ninth Circuit , sitting by designation.

3

the morning of June 15, 1996, the vessel encountered severe weather and extremely rough seas which caused seawater to come over the aft deck. At approximately 8:00 a.m., seawater in the vessel's alternator room, two levels below the deck, shorted the two active alternators and caused a complete loss of electrical power to the ship. Electricity was required to run the main engine and steer the ship. The third alternator, which was on standby, should have engaged but either did not or was immediately turned off so that it could be evaluated for water damage. The vessel's emergency electrical system, required by the Safety of Life at Sea Convention of 1974, should have provided emergency lighting from batteries, followed by the automatic start-up of the emergency generator to provide electrical services for steering. The batteries failed and the emergency generator was ultimately started manually. The emergency system was not designed to provide motive power.

The parties dispute the exact means by which the seawater reached the alternator room. It is, however, undisputed that a skylight, or raised hatch, nine feet above deck and two levels above the alternators was open at some point during the relevant period. The floor of the room below the skylight was the ceiling of the alternator room. Several small holes had been cut in this floor/ceiling to enable equipment to operate properly while resting on the floor. Water coming through the

4

skylight could have gone through these holes into the alternator room. It is also undisputed that outside deck-level vent covers to the exhaust vents were open and that these vents lead to the alternator room.

Without steering, the vessel was tossed at extreme angles as it could not position itself to best withstand the high waves. The captain of the vessel put out a Mayday. He entered into a salvage agreement with Pentow Marine, Ltd., a salvage tug, pursuant to a Lloyd's Open Form. The salvors arrived in the late afternoon.

In the process of trying to manually start the emergency generator, two engineers on board broke the handle off the emergency generator circuit-breaker. The electrician then "hot wired" the broken circuit breaker to engage the emergency system. The restored lighting enabled the engineers to examine and start the stand-by alternator. The main engines were ultimately started prior to the arrival of the salvors, and, after waiting out the storm, the M.V. Olivebank sailed to a port of refuge on its own power.

The salvors exercised their salvage lien by threatening arrest of the cargo and/or the ship. Prior to salvage arbitration, the vessel and the cargo interests settled with and paid the salvors. The owners of the M.V. Olivebank declared general average, forcing the cargo interests to provide general average bonds and guarantees, which remain outstanding.

5

Folger Coffee and Gulf Insurance filed actions in district court seeking a declaration that the vessel was not entitled to general average and recovery for damage to cargo. The actions were consolidated,[2] and, following a two-day bench trial, the district court found for the vessel. The district court found that the loss of power was caused by a fortuitous combination of events and that the vessel was seaworthy when it left port. The district court entered a final amended judgment on October 8, 1998, and Folger Coffee and Gulf Insurance timely appealed.

## DISCUSSION

**A. Rule 52(a) & Standard of Review**

Rule 52(a) requires a district court sitting as trier of fact to "find the facts specially and state separately its conclusions of law thereon[.]" The rule specifically permits oral delivery following the close of evidence and states that "[f]indings of fact . . . shall not be set aside unless clearly erroneous." Folger Coffee and Gulf Insurance urge us to exercise de novo review because the district court failed to "express its findings of fact with sufficient particularity and provided no recognizable conclusions of law."

We rejected an identical argument in *Burma Navigation Corp. v. Reliant Seahorse MV,* 99 F.3d 652, 656 (5th Cir. 1996):

---

[2]    Two other actions were later filed and subsumed into the same docket number.

> [Appellants'] challenge to the specificity of the district court's fact findings under Rule 52(a) appears to be a thinly veiled attempt to turn a sufficiency-of-the-evidence argument into a legal challenge. . . . Rule 52 requires the district court to simply issue findings with sufficient detail to enable the appellate court to consider the findings under the applicable reviewing standard. Rule 52 is satisfied if the district court's findings give the reviewing court a clear understanding of the factual basis for the decision.

*Id.* (note and citations omitted); *see also Chandler v. City of Dallas,* 958 F.2d 85, 88-89 (5th Cir. 1992) (per curiam) (discussing rationale behind the rule). More recently, we have stressed that as long as the district court's account of the evidence is plausible, it must be accepted. *See Luhr Bros., Inc. v. Shepp (In re Luhr Bros., Inc.),* 157 F.3d 333, 338 (5th Cir. 1998), *cert. denied sub nom. Jones v. Luhr Bros., Inc.,* 119 S. Ct. 1357 (1999). The district court's findings of fact and conclusions of law meet the requirements of Rule 52.

Folger Coffee and Gulf Insurance further contend that the issue of seaworthiness is a mixed question of law and fact reviewed de novo. We have previously held that seaworthiness is an issue of fact reviewed for clear error. *See Stevens v. East-West Towing Co., Inc.,* 649 F.2d 1104, 1106 (5th Cir. 1981); *see also Deutsche Shell Tanker Gesellschaft v. Placid Refining Co.,* 993 F.2d 466, 469 (5th Cir. 1993) (determinations regarding each element of general average claim are findings of fact). The contentions of Folger Coffee and Gulf Insurance do not

persuade us otherwise.

**B. General Average & Carriage of Goods at Sea Act (COGSA)**

Folger Coffee and Gulf Insurance maintain that the M.V. Olivebank was not entitled to general average because the vessel was unseaworthy under the Carriage of Goods at Sea Act, 46 U.S.C. §§ 1300-1315.

The parties do not dispute that the bill of lading covering the cargo aboard the M.V. Olivebank required general average contribution. Under COGSA, once the vessel establishes that a general average act occurred,[3] the cargo owner may only avoid liability by establishing that the vessel was unseaworthy at the start of the voyage and that the unseaworthiness was the proximate cause of the general average event. If the cargo owner proves unseaworthiness, the vessel may still prevail by proving that it exercised due diligence to make the vessel seaworthy prior to the voyage. *See Deutsche Shell,* 993 F.2d at 468.

**1. Seaworthiness**

The district court held that the evidence did not support the proposed finding that the vessel was unseaworthy due to a defective emergency electrical system. The district court found that the failure of the batteries and emergency system was

---

[3] The parties do not dispute that the events experienced by the M.V. Olivebank were sufficient to trigger general average.

due to the same intervening event that caused the primary alternators to fail (entry of seawater and corresponding power surge) and that the collapse of both systems at the same time was fortuitous. The district court further found that the emergency system was sufficient because it started, whether mechanically or manually, and that the broken switch was caused by human error not a defect. The district court found the contemporaneous evidence established that the engineer made a decision not to engage the stand-by alternator (number 2) and that the automatic starting mechanism was not defective. The district court held that the M.V. Olivebank was seaworthy when it left port and that the open skylight and the vent covers were not an issue of seaworthiness but a management decision. The district court's decision was not clear error.

### a. Negligence Per Se - Safety of Life at Sea Convention (SOLAS)

Folger Coffee and Gulf Insurance contend that the vessel was per se unseaworthy under the 1993 amendment to the 1974 Safety of Life at Sea Convention. They argue that the M.V. Olivebank did not meet the SOLAS standards regarding alternate and emergency power and lighting, and that this failure was the proximate cause of the loss.

We are not persuaded by Folger Coffee and Gulf Insurance's contention that the concept of negligence per se may be used to overcome COGSA's burden of

9

proof requirements. The authority Folger Coffee and Gulf Insurance rely on to support this contention deals with negligence in the context of personal injury rather than under COGSA. *See Kernan v. American Dredging Co.,* 355 U.S. 426, 438-39 (1958) (wrongful death action claiming FELA violation); *Smith v. Trans-World Drilling Co.,* 772 F.2d 157, 162 (5th Cir. 1985) (seaman injury claim under Jones Act and general maritime law); *Dougherty v. Santa Fe Marine, Inc.,* 698 F.2d 232 (5th Cir. 1983) (employees of mobile offshore drilling unit alleging injury for violation of Coast Guard regulation).

### b. Entry of Seawater-Presumption of Unseaworthiness

Folger Coffee and Gulf Insurance contend that the entry of seawater into the vessel leads to a presumption of unseaworthiness. We find no authority to support such a presumption. *Jahn v. The Folmina,* 212 U.S. 354 (1909), a pre-COGSA case, did not deal with seaworthiness as the term is used under COGSA, but rather how the absence of proof as to causation affects a determination of negligence where cargo has been damaged by seawater. Similarly, in *Artemis Maritime Co. v. Southwestern Sugar & Molasses Co.,* 189 F.2d 488 (4th Cir. 1951), seawater reached the cargo through a corroded and weak hull, conditions that, with due diligence, could have been discovered prior to the voyage. *See id.* at 491. Here, in contrast, any damage to the cargo could reasonably be deemed by a trier of fact to

10

have stemmed from events occurring after the entry of seawater.

The district court did not commit clear error by finding the vessel seaworthy despite the entry of seawater. It found that the water came onto the ship over the stern in a storm with force 11 winds. This finding has support in the record.

### c. Management Decision - Skylight and Vent Covers

Folger Coffee and Gulf Insurance contend that the conditions of the skylight, or hatch, and vent covers and the fact that these items were not customarily closed made the vessel unseaworthy. The district court found that the most likely explanation for the entry of water into the alternator room was through the hatch and the exhaust vents and that the vessel was relieved of liability because the decision not to close the skylight or the vent covers was a management decision. The district court further found that these items, though not in ideal condition, functioned properly since, once closed and fastened, they did not let any more water inside.

COGSA "excepts the carrier for liability from damage caused by '[a]ct, neglect, or default of the master, mariner, pilot, or the servants of the carrier in the navigation or in the management of the ship.'" *Usinas Siderugicas de Minas Geras, SA-Usiminas v. Scindia Steam Navigation Co., Ltd,* 118 F.3d 328, 333 (5th Cir. 1997) (quoting 46 U.S.C. § 1304(2)(a)). Failure to detect a flaw prior to sailing constitutes a failure to exercise due diligence and not an error of management. *See*

11

*id.* at 332.  "There is a fine line between actions that constitute errors in management and inaction that constitutes a lack of due diligence."  *Id.*

Folger Coffee and Gulf Insurance argue that the failure to close the skylight and vents could not have been a management decision because it was not an act but an omission.  Folger Coffee and Gulf Insurance have misconstrued the district court's use of the phrase "management decision."  Neglect by management also relieves liability under COGSA.[4]  *See* 46 U.S.C. § 1304(2)(a).

The district court's finding that the vessel was not rendered unseaworthy due to the state or condition of the skylight and vent covers was not clear error and is supported by the record.

### 2. Proximate Cause & Due Diligence

Folger Coffee and Gulf Insurance bear the burden of proving both unseaworthiness and proximate cause.  *See Deutsche Shell,* 993 F.2d at 468.  The record supports the district court's finding that the vessel was seaworthy.  We therefore do not reach the issue of proximate cause. The district court's failure to make findings on due diligence was not clear error in light of its findings on seaworthiness and proximate cause.  *See id.*

---

[4]  We recognize that the district court made no finding of negligence by the crew.  We stress only that COGSA does not permit liability predicated on neglect by management.

## CONCLUSION

The district court's findings of fact and conclusions of law met the requirements of Fed. R. Civ. P. 52(a). The district court did not clearly err by (1) enforcing the general average, (2) finding that the vessel was seaworthy, and (3) failing to reach the issue of due diligence.

**AFFIRMED.**