**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-20281

CENTURY MARINE INCORPORATED,

Plaintiff-Appellant;

VERSUS

UNITED STATES OF AMERICA,

Defendant-Appellee.

Appeal from the United States District Court
For the Southern District of Texas

August 27, 1998

Before BARKSDALE, BENAVIDES and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Appellant Century Marine, Inc. ("Century"), appeals the district court's dismissal of its claims for additional compensation under a fixed-price vessel repair contract with the Maritime Administration of the United States Department of Transportation ("MARAD"). MARAD terminated the contract because of Century's default in failing to complete the work within the time specified by the contract. Century filed suit against the United States seeking to have the termination for default converted to a termination for the Government's convenience; and for payments in addition to the amount MARAD had paid Century under the terminated

contract.  After a bench trial, the district court rejected Century's demands and dismissed its suit with prejudice.  We affirm.  On appeal Century does not contest the trial court's determination that its contract was properly terminated for default.  Despite its default, Century argues that it is entitled to recover an amount equal to the unpaid balance of the full fixed price of the contract less the cost of completion of the unfinished work under the contract.  Century's argument is contrary to well established law and federal regulations.  Under the Government's termination of a fixed-price contract because of the contractor's default, the Government is not liable to the contractor for unperformed or undelivered work.  Anticipated but unearned profits are not recoverable by the contractor when the Government terminates the contract for the contractor's default or for the convenience of the Government.  Century's additional contention that it should be compensated for extra work is also without merit. There is warrant in the record and an applicable basis in law for the district court's rejection of this claim after a trial on the merits.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In September 1992, Century and MARAD entered into a fixed-price contract for the repair and renovation of cargo and ballast tanks of the S.S. MOUNT WASHINGTON, a public vessel of the United States.  Thereafter, MARAD issued three contract modifications ("Mods") that increased the contract value by $1,050,000.000, for a total contract amount of $8,521,910.000.  When Century fell

2

behind schedule on the original completion date of May 3, 1993, MARAD issued three additional Mods that extended the completion date until September 15, 1993. Despite these extensions, Century continued to fall behind its work schedule. When it became evident that Century could not complete the contract timely, by letter dated September 8, 1993, MARAD terminated Century for default.[1] At the time of termination, MARAD had made progress payments to Century of $5,903,135.50. On September 22, 1993, the Government issued Modification No. 0009 ("Mod 9") to the contract that adjusted the contract price for the value of the unfinished work, and calculated the final progress payment to Century based on its completed work. MARAD eventually retained another contractor to finish Century's work.[2]

Mod 9, admitted as a Government exhibit at trial, sets forth the percentage of completion of each work item, and adjusts the total contract price by deducting the contract value of Century's

---

[1] Pursuant to the Federal Acquisition Regulations, the Government may, by written notice of default to the contractor, terminate the contract in whole or in part if the contractor fails to perform the services within the time specified in the contract or any extension. 48 C.F.R. § 52.249.8(a)(1)(i). "Federal regulations which are based upon a grant of authority 'have the force and effect of law, and, if they are applicable, they must be deemed terms of the contract even if not specifically set out therein, knowledge of which is charged to the contractor.'" *General Eng'g & Mach. Works v. O'Keefe,* 991 F.2d 775, 780 (Fed. Cir. 1993).

[2] Under the Federal Acquisition Regulations, when the services to be provided by the terminated contractor are still required after default, the contracting officer shall repurchase the same services against the contractor's account as soon as practicable, 48 C.F.R. § 49.402-6(a), and the contractor is liable to the Government for any excess costs incurred in acquiring services similar to those terminated for default. 48 C.F.R. § 49.402-2(e).

3

uncompleted work, estimated at $1,260,861.00. In Mod 9, MARAD based the percentage of completion in part on Century's own percent completion figure provided in its last progress payment request submitted to MARAD one week prior to termination, with this figure adjusted for work accomplished by Century during the final week of the terminated contract. The Government's estimate in Mod 9 of the contract value of Century's uncompleted work also was based on a thorough inspection and videotaping of each item of unfinished work by Richard Volkmann, the contracting officer's technical representative, who testified at trial.

Based on the Government's calculations in Mod 9, MARAD made a final payment to Century of $409,023.56, representing compensation for all work performed after the latest progress payment but before Century was terminated for default. According to the contracting officer's decision denying Century's administrative claims for additional compensation, this final payment to Century represented: (1) payment for the progress made by Century between the time of its last progress payment and termination of the contract ($51,532.00); (2) payment of the balance of retainage owed to Century after deducting the excess cost of procurement ($285,539.06)[3]; and (3) payment of funds withheld at the direction of the Government's legal department until a separate claim on another contract was settled ($71,952.50).

---

[3] Under the Federal Acquisition Regulations, "the contracting officer shall use all retained percentages of progress payments previously made to the contractor and any progress payments due for work completed before the termination to liquidate the contractor's liability to the Government." 48 C.F.R. § 49.406.

In July 1994, Century submitted a "Request For Equitable Adjustment and For Conversion of a Termination For Default to a Termination For Convenience." Century's Request For Equitable Adjustment presented an administrative claim for additional payments of almost $1.3 million under the contract, based on Century's allegations that MARAD had underestimated the percentage of completion of finished work items in Mod 9, and that MARAD was not entitled to retain excess costs of reprocurement from the retainage withheld from the final payment to Century because Century was wrongfully terminated. Century also asserted a claim for $21,254 in extra work performed pursuant to Century's Request For Delivery Orders (RDOs). Finally, Century requested that its termination for default be converted to a termination for convenience.

In December 1994, the Government's contracting officer issued a final administrative decision on Century's claims, denying any further payments to Century. This 48-page decision, with attached supporting exhibits, rebuts in detail each allegation in Century's Request For Equitable Adjustment, concluding that Century's "termination for default is valid," and that Century "is not entitled to a further equitable adjustment."

In September 1994, pursuant to the Contract Disputes Act, 41 U.S.C. § 603, and the Suits in Admiralty Act, 46 U.S.C. § 741 *et seq.,* Century sued the United States in the Court of Federal Claims, which transferred the case to the Southern District of

5

Texas.[4]  The United States elected not to file a counterclaim against Century for liquidated damages, which are recoverable against a contractor terminated for default.  *See* 48 C.F.R. §§ 49.402-6(c), 49.402-7, 49.402-2(e).  Century's claims were tried to a judge in December 1996.

In the district court, Century presented no evidence supporting the claim in its administrative level Request For Equitable Adjustment that it was entitled to recover the excess costs of reprocurement that the Government had deducted from Century's retainage.  Exhibit K of the Contracting Officer's decision, which was the only evidence of the Government's excess reprocurement costs and the amount of retainage withheld at termination, was withdrawn at trial after Century objected to its admissibility.

On January 3, 1997, the district court issued findings of fact and conclusions of law rejecting Century's claims, finding that the United States' termination of Century for default was justified by Century's breach of the contract, and that Century had no valid claim for an equitable adjustment to the contract.  Also on January 3, 1997, the district court rendered a final judgment dismissing Century's claims against the United States with prejudice.

---

[4] Under § 603 of the Contract Disputes Act, subject matter jurisdiction in appeals of administrative decisions involving federal maritime contracts vests in the federal district courts, rather than in the Court of Claims (now the Court of Federal Claims) or the Court of Appeals for the Federal Circuit. *Bethlehem Steel Corp. v. Avondale Shipyards, Inc.*, 951 F.2d 92, 93, 94 (5th Cir. 1992).  Government maritime contracts are otherwise governed by the Contract Disputes Act.  *Id.* at 94.

6

On January 10, 1997 Century filed a Motion to Amend or Make Additional Findings of Fact, asserting that Century had made a prima facie case on two claims that had not been rebutted by the United States: (1) a claim for extra work performed on seven RDOs in the amount of $20,583; and (2) a claim for the "contract balance" due of $1,293,218.54 resulting from the following computation:

| | |
|---|---|
| Modified Contract Amount | $8,521,910.00 |
| Less-Payments and Deducts | $6,492,159.46 |
| Less-Work not performed | $  714,187.00 |
| Less-Tow credit and Item 058 | $   22,345.00 |
| Contract Balance Due | $1,293,218.54 |

On March 4, 1997 the district court entered an order denying Century's Motion to Amend or Make Additional Findings of Fact. Century appealed.

## II.  STANDARD OF REVIEW

The district court's findings of fact must be reviewed under the "clearly erroneous" standard of Fed R. Civ. P. 52(a).  A finding of fact is said to be "clearly erroneous" when, notwithstanding there is evidence to support it, the reviewing court upon examination of the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Justiss Oil Co. v. Kerr-McGee Refining Corp.,* 75 F.3d 1057, 1062 (5th Cir. 1996) (citing *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948)).  With respect to the legal conclusions reached by the trial court on the basis of the facts so found, this court will conduct a *de novo* review.  *Reich v. Lancaster,* 55 F.3d

7

1034, 1045 (5th Cir. 1995).

### III. DISCUSSION

On appeal, Century does not contest the district court's determination that MARAD properly terminated the contract for Century's default. Nor does Century reurge its administrative level claim that MARAD had withheld an excessive amount of retainage from the final payment to Century. Century argues only that the district court's judgment denying its claims for the "contract balance" and extra work was clearly erroneous and must be reversed because: (1) Century made a prima facie case at trial for its contract balance and extra work claims; (2) MARAD failed to rebut Century's proof on these claims; (3) the district court made no express findings on each of these claims; and (4) no such findings can be implied because an implied finding is not supported by the evidence.

### A. Century's "Contract Balance" Claim

Century contends that it made out a prima facie case for recovery of a "contract balance" of either $1,293,218.54 or $768,889.54. It is undisputed that the total amount of the fixed-price contract, including all modifications, was $8,521,910.00, and that MARAD had paid Century $6,492,159.46 for work completed prior to Century's termination for default, leaving an unpaid balance of $2,029,750.54 under the contract at that time. MARAD and Century presented conflicting technical expert evidence as to the estimated cost of completing the contract: Century's estimate was $736,532.00 and MARAD's was $1,260,861.00. Consequently, Century asserts,

8

after subtracting the estimated cost of completing the work under the contract from the unpaid balance, Century is entitled to the difference, *viz.*, either $1,293,218.54 or $768,889.54, depending on whether the Century or the MARAD estimate is used.

Century's argument lacks a sound basis in law. Termination for default is generally the exercise of the Government's contractual right to completely or partially terminate a contract because of the contractor's actual or anticipated failure to perform its contractual obligations. 48 C.F.R. § 49.401(a). The Government has the right to terminate a fixed-price contract for default if the contractor fails to deliver the supplies or to perform the services within the time specified in the contract. 48 C.F.R. § 49.402-1. Under a termination for default, the Government is not liable for the contractor's costs on undelivered work. 48 C.F.R. § 49.402-2(a). In contrast, under a fixed-price contract terminated for the convenience of the Government, a settlement should compensate the contractor fairly for the work actually done and for the preparations made for the terminated portions of the contract, including a reasonable allowance for profit applicable to that work and preparations. 48 C.F.R. §§ 49.201, 49.202. Anticipatory profits and consequential damages shall not be allowed under either a termination for convenience or a termination for default of a fixed-price contract. 48 C.F.R. §§ 49.201, 49.202, 49.402-2; *See Mega Constr. Co. v. United States*, 29 Fed. Cl. 396, 475 (1993); *G.L. Christian & Assocs. v. United States*, 312 F.2d 418, 426 (Ct. Cl.), *cert. denied,* 375 U.S. 954 (1963).

9

Consequently, as a contractor terminated for default, Century cannot, as a matter of law, recover the "unpaid balance" of the contract less the "cost of completion" of the work under the contract. To allow such recovery would permit Century to do indirectly what it could not do directly, *viz.*, recover anticipated but unearned profits after the contract has been terminated because of its default. A contractor's right to recover for anticipated profits arises only if the termination of the contract by the Government is wrongful and constitutes a breach. *G.L. Christian,* 312 F.2d at 423 (citing *United States v. Behan*, 110 U.S. 338, 346 (1884); *United States v. Spearin*, 248 U.S. 132, 138 (1918); *Broadbent Portable Laundry Corp. v. United States*, 56 Ct. Cl. 128, 132 (1921)). Any recovery of profits by a contractor on a contract terminated because of its own default is limited to earned profit on work actually performed prior to the termination. *Mega Constr.*, 29 Fed. Cl. at 475.

## B. Century's Claim For Extra Work

Century argues that the district court's findings and conclusions are legally insufficient because the court made no express finding addressing its extra work claim, and that any implied finding by the court on the extra work issue is not supported by the evidence.

Rule 52(a) of the Federal Rules of Civil Procedure provides that "[i]n all actions tried upon the facts without a jury. . ., the court shall find the facts specially and state separately its conclusions of law thereon. . . ." The articulation of findings of

10

fact and conclusions of law allows this court to ascertain the factual and legal bases for the district court's decision, thereby providing a sufficiently definite predicate for appellate review. *Chandler v. City of Dallas,* 958 F.2d 85, 90 (5th Cir. 1992). But Rule 52(a) "exacts neither punctilious detail nor slavish tracing of the claims issue by issue and witness by witness." *Burma Navigation Corp. v. Reliant Seahorse M/V,* 99 F.3d 652, 656 (5th Cir. 1996) (quoting *Schlesinger v. Herzog,* 2 F.3d 135, 139 (5th Cir. 1993)); *see also United States v. Northside Realty Assocs., Inc.,* 474 F.2d 1164, 1170 n.5 (5th Cir. 1973) ("'Courts need not indulge in exegetics, or parse or declaim every fact and each nuance and hypothesis.'") (quoting *Gulf King Shrimp Co. v. Wirtz,* 407 F.2d 508, 516 (5th Cir. 1969)). The rule is satisfied if the district court's findings give the reviewing court a clear understanding of the basis for the decision. *Burma Navigation,* 99 F.3d at 656.

If a trial judge fails to make a specific finding on a particular fact, the reviewing court may assume that the court impliedly made a finding consistent with its general holding so long as the implied finding is supported by the evidence. *In re Texas Mortgage Servs. Corp.,* 761 F.2d 1068, 1075 n.12 (5th Cir. 1985); *Gilbert v. Sterrett,* 509 F.2d 1389, 1393 (5th Cir.), *cert. denied,* 423 U.S. 951 (1975).

According to the district court's factual findings and conclusions of law, Century had been compensated for the ten valid delivery orders under which it performed "extra work" to repair

11

weld fractures. The court also reached the legal conclusion that "there is no valid basis for an equitable adjustment to the contract." In rejecting Century's general claim for equitable adjustment, which encompassed the extra work claim, the district court impliedly found that Century was not entitled to compensation for any other extra work.

The district court's 12-page findings of fact and conclusions of law are sufficiently detailed to adequately state the factual and legal bases for the district court's denial of Century's claim for extra work, thereby providing a sufficiently definite predicate for proper appellate review. The court's implied denial of Century's extra work claim is fully supported by the evidence, particularly Mod 9, which sets forth the percentage of completion for unfinished delivery orders; the contracting officer's decision, which provides detailed reasons for MARAD's denial of Century's claims for extra work; and the testimony of Volkmann, the contracting officer's technical representative, who testified that he personally inspected and videotaped Century's unfinished work and that he researched and drafted 90% of the contracting officer's decision with the assistance of Billy Greer, another MARAD employee who testified at trial.

In so doing, we reject Century's argument that the contracting officer's decision is a "pleading" and therefore cannot be used as evidentiary support for the trial court's implied denial of Century's claim for extra work. Under the Contract Disputes Act, contracting officers are not required to make specific findings of

12

fact, but, if made, they "shall not be binding in any subsequent proceeding."  41 U.S.C. § 605(a).  However, there is nothing in the Contract Disputes Act that prohibits the use of the contracting officer's findings and conclusions as evidence in a subsequent *de novo* proceeding.[5]  *Cupey Bajo Nursing Home, Inc. v. United States,* 36 Fed. Cl. 122, 130 (1996) ("[T]his court reviews the facts and law decided by a contracting officer similar to other evidence before it[.]").  *Accord Lathan Co. v. United States,* 20 Cl. Ct. 122, 125 (1990) ("This court may weigh the [contracting officer's] findings and conclusions as it would any other evidence.").  *See Wilner v. United States,* 24 F.3d 1397, 1403-04 (Fed. Cir. 1993) (en banc) (expressly overruling pre-Contracts Dispute Act precedent holding that a contracting officer's decision "constitutes a strong presumption or an evidentiary admission. . . albeit subject to rebuttal," but cautioning that its opinion does not "suggest[] that a contracting officer's final decision has no place in . . . litigation in the Court of Federal Claims").  Therefore, in its role as the finder-of-fact, a district court may give the contracting officer's administrative determinations weight, not deference.  *Mega Constr.,* 29 Fed. Cl. at 414.  *Cf. Universal Camera Corp. v. National Labor Relations Bd.,* 340 U.S. 474, 493-94 (1951) (holding that the nonbinding findings of an NLRB "trial examiner"

---

[5] The Contract Disputes Act provides that, after a contracting officer renders a decision on a claim, a contractor may bring an action directly on the claim in the United States Court of Federal Claims (formerly the United States Claims Court), 41 U.S.C. § 609(a)(1), where the action "shall proceed de novo in accordance with the rules of the appropriate court."  41 U.S.C. § 609(a)(3).

may be considered in a subsequent appeal to establish whether an employee's removal was supported by substantial evidence); *Chandler v. Roudebush,* 425 U.S. 840, 864 n.39 (1976) (holding that prior administrative findings can be used as evidence of the ultimate matters at issue in a subsequent *de novo* proceeding).

Accordingly, we conclude that the Contract Disputes Act does not preclude the use of the contracting officer's decision as evidence of the ultimate matters at issue in a subsequent *de novo* proceeding, provided that it is not given deference or a rebuttable presumption of correctness.

## IV.  CONCLUSION

Having reviewed the record and considered all of Century's arguments, we conclude that the district court did not commit any error of law or clear error of fact in finding Century in default and in rejecting Century's claims with prejudice.  As for Century's "contract balance" argument, we conclude that there is no basis in law for a defaulted contractor to recover the difference between the unpaid balance of the contract and the cost of completing the unfinished work under the contract.  It is well settled that a defaulted contractor cannot recover anticipated but unearned profits.  Accordingly, the judgment of the district court is AFFIRMED.

**RHESA HAWKINS BARKSDALE, Circuit Judge, specially concurring:**

I concur in the judgment being **AFFIRMED**, but would do so on the basis that, pursuant to the district court's findings of fact and conclusions of law, and the underlying evidence upon which they are based (especially, modification No. 009 and the Government contacting officer's written response to the request for equitable adjustment), Century Marine's claims presented in this court fail, to include its primary claim that it was not paid for work which it performed.

Concerning that primary claim, the references in the majority opinion concerning anticipated but unearned profits seem wide of the mark. Such a "lost-profit" claim is not raised by Century Marine; and, contrary to the approach taken by the majority, I would not assume that this is the indirect or implied thrust of the position asserted here. To do as the majority has done results, in my view, in this court reaching outside the record—something we should not, indeed cannot, do.