United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 9, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-10710
Summary Calendar
_____

In The Matter Of: PIRANHA INC,

Debtor,

------------------------

RICHARD S BERGER,

Appellant,

versus

ROBERT NEWHOUSE, Chapter 7 Trustee of the Bankruptcy Estate of In
Re: Piranha, Inc, as successor to Piranha, Inc,

Appellees.

---------------------
Appeal from the United States District Court
for the Northern District of Texas
(3:01-CV-2223-D)
---------------------

Before JOLLY, WIENER, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Appellant Richard S. Berger appeals the district court's June

20, 2003 Order affirming an earlier Bankruptcy Court decision on

jurisdiction over a case involving a debtor in bankruptcy, Piranha,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Inc. ("Piranha").[1]  Berger contends that the Bankruptcy Court has no jurisdiction to consider Piranha's bankruptcy filing because the filing was not a valid action of Piranha's board of directors under the company's bylaws and Delaware state law.[2]  The Bankruptcy Court concluded that the filing was valid, vesting that court with jurisdiction over the case.  We affirm.

## I.  Facts and Proceedings

In May 2001, the chairman of Piranha's board of directors, Edward Sample, called a special board meeting for May 25 to consider restructuring Piranha's management.  In addition to Sample, Piranha's directors were Michael Steele, Larry Greybill, and Berger.  Claiming lack of sufficient notice, Berger protested the May 25 meeting and refused to attend.  The other directors held the meeting despite Berger's objection, as they had a quorum without him, and voted to adopt a number of resolutions.  If valid, those resolutions accepted the resignations of Greybill and Steele and appointed Mike Churchill a director.  Greybill submitted his written resignation following the May 25 meeting, as required by Piranha's bylaws and Delaware law.[3]  Steele, however, did not.

---

[1] The original Bankruptcy Court decision was handed down in 2001, but protracted (and ultimately unsuccessful) settlement negotiations delayed the appeal to district court.

[2] See Price v. Gurney, 324 U.S. 100 (1945).

[3] See 8 Del. Code Ann. § 141(b) (2003) ("Any director may resign at any time upon notice given in writing or by electric transmission to the corporation.").

2

Appellees contend that Steele did not do so because the directors knew about Berger's challenge to the meeting's validity and wanted to maintain control of Piranha in the event Berger's notice claims proved to be valid.[4]

Piranha's counsel later informed the directors, however, that insufficient notice probably rendered the May 25 meeting a nullity. To effect the changes that had not been validly made at that invalidly called meeting, Sample furnished notice to the other directors (Steele and Berger, according to Appellees) for a June 15 meeting. Berger also protested the June 15 meeting and again did not attend. At the June 15 meeting, Sample and Steele voted to elect Churchill a director, and on June 16 Steele tendered his written resignation.[5] At a June 20 meeting Piranha's board of directors (then consisting of Sample, Berger, and Churchill, according to Appellees) voted to file for bankruptcy relief under Chapter 11.

## II. Analysis

### A. Standard of Review

---

[4] There are underlying allegations in this case that Berger absconded with Piranha funds without prior Board approval. We do not pass on the substance of these allegations, but note that their existence supports Appellees' arguments, made before the Bankruptcy Court, that all of the Board meetings and changes in Board membership at issue here were attempts to ensure that Appellees retained control of the Board so that any remedial measures regarding the missing funds could be implemented.

[5] Steele waited until June 16 to get Piranha's legal counsel's opinion as to the validity of the June 15 meeting before submitting his resignation.

Findings of fact underlying Bankruptcy Court orders are reviewed for clear error. Conclusions of law are reviewed <u>de novo</u>.[6]

## B. <u>Berger's Contentions</u>

Berger argues that, even though Steele did not tender a formal written resignation prior to June 15, his resignation was effective on May 29, 2001, the date on which Piranha's legal counsel filed a Form 8-K with the Securities and Exchange Commission ("SEC") indicating, <u>inter</u> <u>alia</u>, that Steele had resigned. Berger argues that, because that document contained Steele's electronic signature, under the Uniform Electronic Transaction Act ("UETA")[7] Steele cannot disavow the document; as such, it served as a written resignation effective May 29. Berger contends that by virtue of the invalidity of Churchill's election, he and Sample were the sole remaining directors as of 6/15. According to Berger, this means that the June 20 vote to proceed with the Chapter 11 filing was invalid, as Berger did not vote for that action and Churchill was not a director, because he had not been validly elected at either the May 29 or June 15 meeting. This case therefore turns on the effective date of Steele's resignation.

## C. <u>Steele's Resignation Date</u>

The Bankruptcy Court implicitly found that Steele did not

---

[6] <u>See</u>, <u>e.g.</u>, <u>Krafsur v. Scurlock Permian Corp. (In re El Paso Refinery, L.P.</u>), 171 F.3d 249, 253 (5th Cir. 1999).

[7] 6 Del. Code Ann. §§ 101-117 (2003).

4

resign until June 16, 2001, having refrained from submitting his written resignation until that date.[8] The court further found that Steele did not resign orally — a question of intent — because his conduct was inconsistent with his having done so.[9] The district court agreed with the Bankruptcy Court, deciding that its construction of the UETA was correct and its factual findings not clearly erroneous. We agree.

1. Steele's Form 8-K

 Berger's primary contention is that, because the Form 8-K filed with the SEC contains Steele's electronic signature, he may not disavow it now under § 107(a) of the UETA, and it must therefore stand as the written resignation required by Piranha's bylaws and Delaware law. Berger points to Section 107(a)'s dictate that "[a] record or signature may not be denied legal effect or

---

[8] As the district court notes, the Bankruptcy Court neither explicitly stated that Steele did not resign until June 16, nor squarely addressed the question whether the Form 8-K filed with the SEC constituted a written resignation. Its overall decision, however, must by implication include a finding that Steele did not resign until he submitted his written resignation in tangible form on June 16. And, we will infer that the trial court made a finding that is necessarily included in a broader holding, even if not explicitly stated. See, e.g., Clinkenbeard v. Central Southwest Oil Corp., 526 F.2d 649, 651-52 (5th Cir. 1976).

[9] The Bankruptcy Court had noted that the Tenth Circuit, interpreting a Kansas statute similar to the Delaware law here at issue, ruled that the requirement of a writing is permissive rather than mandatory, and an oral resignation can be effected if intent to resign is evident. See Wylie v. Marley Co., 891 F.2d 1463, 1469 (10th Cir. 1989).

enforceability *solely because it is in electronic form.*[10] Steele, however, does not attempt to deny the legal effect of his signature "solely because it is in electronic form," but because he did not "execute[], adopt[] or authorize[]" it as required by Treasury Regulation S-T.[11] In essence, Steele contends that the Form 8-K was filed in error, three hours after being forwarded to him via email by Piranha's legal department for his review.

As the district court noted, sections 109(a) and (b) of the UETA indicate that a document bearing an electronic signature may be contested on these very grounds. Section 109(a) states that an "electronic signature is attributable to a person if it was the act of the person;"[12] section 109(b) explains that "[t]he effect of an electronic record or electronic signature attributed to a person under subsection (a) of this section is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption ...."[13] Section 109(b) makes clear that a litigant may challenge the effect of his electronic signature by discussing its "context and surrounding circumstances" in front of the reviewing court. In the instant case, Steele did just that, contending that the Form 8-K was filed in error and that he did not

---

[10] 6 Del. Code Ann. § 107(a) (2003)(emphasis added).

[11] 17 C.F.R. § 232.302(a) (2003).

[12] 6 Del. Code Ann. § 109(a) (2003).

[13] 6 Del. Code Ann. § 109(b) (2003).

execute, adopt, or authorize the electronic signature it contained. We cannot say that the Bankruptcy Court committed clear error by agreeing with him.

## 2. Steele's Actions Prior to June 16

The Bankruptcy Court also found that Steele's actions between May 25 and June 16 were more consistent with his having remained a director of Piranha than with his having resigned effective either May 25 or May 29. This, in turn, forecloses a conclusion of oral resignation.[14] Again, we cannot say that this finding constitutes clear error. It is the province of the fact-finder to weigh the evidence and make credibility determinations. The trial court's factual determinations must stand unless we are "left with the definite and firm conviction that a mistake has been committed,"[15] which, in this case, we are not.

## III. Conclusion

For the foregoing reasons, the decision of the district court affirming the Bankruptcy Court's jurisdiction over the underlying bankruptcy action is AFFIRMED.

---

[14] See note 9, supra, and accompanying text.

[15] Century Marine, Inc. v. U.S., 153 F.3d 225, 229 (5th Cir. 1998).