# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 12, 2008

Charles R. Fulbruge III
Clerk

No. 07-20353
Summary Calendar

SUN'S MOTORCAR GROUP LLC; TIELIN SUN

Plaintiffs–Appellees

V.

QRS AUTO GROUP INC; SHAO GUANG HE, also known as David Ho;
GUANGZHOU KAISI INVESTMENT CO LTD, also known as
Guangzhoushi Kaisi Touzi Youxian Gongsi

Defendants–Appellants

Appeal from the United States District Court
for the Southern District of Texas, Houston
No. 4:04-CV-4736

Before KING, DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Defendants–appellants QRS Auto Group, Inc. ("QRS"), Shaoguang He a/k/a David Ho, and Guangzho Kaisi Investment, Co., Ltd. ("Kaisi") (collectively, "Defendants"), appeal the district court's judgment, entered following a bench trial, awarding them $32,525 as the unpaid purchase price for a shipment of wheels and denying their trademark infringement claim against

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

plaintiffs–appellees Sun's Motorcar Group, LLC ("SMG") and Tielin Sun. We AFFIRM.

I.

Sun formed QRS on August 16, 2002. On April 6, 2003, Sun entered into an agreement with U.S. Jin-Chen Enterprise, Inc. ("Jin-Chen") for the purchase by Sun of $695,000 worth of automobile wheels to be manufactured in China. Ho signed the agreement on behalf of Jin-Chen. As a part of this agreement, Sun drafted, perhaps even with the assistance of Ho, the BZO trademark to be embossed on the wheels provided by Jin-Chen. Jin-Chen invoiced the first of four shipments of these wheels on July 22, 2003. Additional shipments followed in August, September, and October 2003.

After discussions with Kaisi representative Yu Gang, Sun entered into a joint venture agreement with Kaisi, which resulted in the formation of SMG on July 11, 2003. Pursuant to the joint venture agreement, Sun transferred the assets of QRS to Kaisi for the original cost of creating it. In addition, Kaisi was to contribute $1 million in U.S. currency to the joint venture, and Sun was to contribute $600,000 worth of auto parts and accessories. Sun contends that due to difficulties in transferring the money, Kaisi decided to fulfill its obligation by contributing $1 million worth of wheels. To that end, Sun asserts that Kaisi sent to Sun 1,271 wheels worth $160,675 in November 2003. New Horizon Management Corporation, a/k/a Rollos, purchased from Sun $114,700 of the November wheel shipment. Rollos sent payment to QRS for $57,350 of the initial shipment. Subsequently, Sun told Rollos to stop payment on the second payment after a dispute arose between Sun and QRS over the joint venture.

According to Sun, prior to the dispute, Sun, Ho, and Yu met in Sun's office on April 5, 2004, to determine how much money they could send back to China to reinvest in capital for the joint venture. By Sun's calculations, after subtracting out what Rollos had already paid for the wheels that it purchased,

a $40,000 salary loan Sun provided to Ho because SMG had not yet decided how much to pay Ho in salary, and the $30,800 in inventory remaining from the November shipment, Sun issued a check from the SMG account to QRS for $32,525 in order to buy more wheels. Ho accepted the check on behalf of QRS.

Sun presented evidence that within a day or two, when Sun was en route to China, Sun received a call from Rollos informing him that QRS and Kaisi were going behind Sun's back to sell BZO rims directly to Rollos, circumventing the joint venture completely. At this point, Sun withdrew the money from the joint venture account, and the $32,525 check to QRS bounced. The joint venture fell through around this time.

On the other hand, Defendants (QRS, Ho, and Kaisi) argued that the joint venture was never consummated because, they contended, Sun refused to provide evidence of financial solvency. Instead, Defendants claim that they entered into an oral agreement with Sun to ship Sun 1,271 wheels, base value $160,675, but $210,000 after profit, in November 2003, with payment to be made to QRS and the profits to be split as follows: 60% to QRS, 20% to SMG, and 20% to Ho. Defendants assert that they accepted the $32,525 check under protest.

On August 24, 2004, Sun filed suit in Texas state court claiming rights to the BZO trademark. Defendants removed the case to federal district court pursuant to 28 U.S.C. §§ 1446(a), 1331, and 1441(b). Defendants counterclaimed seeking a temporary injunction to prohibit Sun from using the BZO trademark, damages for trademark infringement and breach of contract, among other theories, and restitution under the doctrine of quantum meruit. After a hearing, the district court denied the temporary injunction and set the case for trial. Defendants moved for summary judgment, but because the motion could not be addressed before the trial date, the district court held a bench trial on the merits.

At trial, QRS presented evidence that it filed a trademark registration of the BZO trademark—asserting that they first used it in commerce in October 2003—which was approved on March 15, 2004. QRS also claimed that China Wheels, the Chinese supplier of the wheels that Sun purchased via Jin-Chen, authorized QRS to register the BZO trademark in August 2003, after the trademark was allegedly created by Ho and a friend at China Wheels between February and April 2003. However, later at trial, after Sun presented evidence, credited by the district court, that he designed the BZO trademark and established its first use in commerce as of the July 22, 2003, shipment from Jin-Chen, Ho attempted to present the letters from his friend at China Wheels that QRS established the first use. After hearing all the evidence, the district court credited Sun's testimony and evidence regarding the failed joint venture, and honored the parties' calculations that Sun should pay QRS $32,525. Further, the district court credited Sun's testimony and evidence that he created the BZO trademark with Jin-Chen, perhaps with Ho then employed by Jin-Chen, and established first commercial use, at least between the parties to this case, on July 22, 2003.

Therefore, the district court determined that QRS could not satisfy all the elements of its trademark action. The district court entered judgment for Defendants in the amount of $32,525 and sustained Sun's objection to the letters from China Wheels attempting to establish QRS's first commercial use. However, even if admitted, the district court determined that the letters would not establish first commercial use. The district court denied all parties' requests for attorneys' fees and all other requested relief.

Defendants appealed, but their first appeal was dismissed for insufficient notice of appeal. It was subsequently reinstated by this court on August 20, 2007. On appeal, Defendants argue that the district court erred in determining that Sun only owed them $32,525 and in denying their trademark action. While

relying on the excluded letters from China Wheels, Defendants did not argue that the district court erred in excluding them. Thus, the exclusion of that evidence is not at issue in this appeal. Adams v. Unione Di Sicurta, 364 F.3d 646, 653 (5th Cir. 2004).

II.

Following a bench trial, we review the findings of fact for clear error and issues of law de novo. FED. R. CIV. P. 52(a); Peaches Entm't Corp. v. Enm't Repertoire Assocs., Inc., 62 F.3d 690, 693 (5th Cir. 1995). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." Reich v. Lancaster, 55 F.3d 1034, 1045 (5th Cir. 1995). However, if "the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Id. Further, we must "give due regard to the opportunity of the trial court to judge the credibility of the witnesses," and we should be wary of attempting to second guess the district court, which has the decided advantage of first hand experience concerning the testimony and evidence presented at trial." Id.

While finding the evidence unclear regarding the formation of the joint venture, the district court implicitly credited Sun's calculations that the $57,350 initially paid by Rollos for the wheels, the $40,000 for Ho's salary loan, and the $30,800 in inventory retained for joint venture expenses, should be deducted from the $160,675 value of the wheels, rather than from the $210,000 claimed by Ho to be part of an oral consignment agreement in lieu of the failed joint venture. Consequently, the district court held that Sun owes QRS $32,525 as the remaining unpaid amount for the wheels sold to Rollos.

We cannot say that this finding is clearly erroneous. "If a trial judge fails to make a specific finding on a particular fact, the reviewing court may assume that the court impliedly made a finding consistent with its general holding so long as the implied finding is supported by the evidence." Century Marine Inc. v. United States, 153 F.3d 225, 231 (5th Cir. 1998). Implicitly, the district court found that the total sum owing was the $160,675 rather than the $210,000, which was only supported by Ho's testimony and a letter from Ho's attorney. The district court also implicitly credited Sun's testimony regarding the offset for Ho's salary loan and the retention of the inventory to cover the expenses of the failed joint venture. Based on the evidence, we cannot say that this was clearly erroneous.

With respect to Defendants' trademark claim, the district court properly summed up what Defendants would have to prove in order to prevail and prevent Sun from using the BZO trademark: assuming that the trade name is eligible for protection, Defendants must prove they established the BZO trademark by being the senior user, and that the use of the mark by Sun causes confusion in the market place. 15 U.S.C. § 1114(1); see Union Nat'l Bank of Texas, Laredo, Texas v. Union Nat'l Bank of Texas, Austin, Texas, 909 F.2d 839, 844 (5th Cir. 1990). Crediting Sun's testimony that he created the BZO trademark and established its first use in commerce as between these parties on July 22, 2003, and holding QRS to its testimony and trademark application that its first use was in October 2003, the district court committed no reversible error in determining that Defendants failed to satisfy the elements of a trademark infringement action.

### III.

Consequently, we AFFIRM the judgment of the district court.